(No. 87958.—Remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. COREY MOORE, Appellant.

*Opinion filed May 22, 2003.—Rehearing denied September 29, 2003.*

Charles Schiedel, Deputy Defender, and Charles W. Hoffman, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee G. Goldfarb and Jon J. Walters, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant, Corey Moore, was convicted of the

first degree murder and the aggravated unlawful restraint of Kimberly Fort. See 720 ILCS 5/9—1(a), 10—3.1 (West 1996). At a separate sentencing hearing, the court found defendant eligible for the death penalty and further determined that there were no mitigating circumstances sufficient to preclude imposition of that sentence. Accordingly, the trial court sentenced defendant to death.

Defendant prepared a *pro se* motion for the appointment of counsel other than the public defender. The motion contained a number of allegations of trial counsel's ineffectiveness. At the posttrial hearing, the trial court refused to consider defendant's *pro se* motion.

Defendant's death sentence has been stayed pending direct review by this court. Ill. Const. 1970, art. VI, § 4(b); 134 Ill. 2d Rs. 603, 609(a). Subsequent to the filing of defendant's appeal, then-governor George Ryan commuted defendant's death sentence to natural life without possibility of parole or mandatory supervised release.

An appellate issue is moot when it is abstract or presents no controversy. *People v. Blaylock*, 202 Ill. 2d 319, 325 (2002). An issue can become moot if circumstances change during the pendency of an appeal that prevent the reviewing court from being able to render effectual relief. *People v. Jackson*, 199 Ill. 2d 286, 294 (2002). Commutation removes a judicially imposed sentence and replaces it with a lesser, executively imposed sentence. *People ex rel. Johnson v. Murphy*, 257 Ill. 564, 566 (1913); Black's Law Dictionary 274 (7th ed. 1999).

Therefore, the commutation rendered defendant's sentencing issues moot. See, *e.g.*, *Lewis v. Commonwealth*, 218 Va. 31, 38, 235 S.E.2d 320, 325 (1977); *State*

*v. Mitchell*, 239 Or. 87, 88, 396 P.2d 572, 573 (1964).[1] We exercise our discretion to address the nonsentencing issues in this case. See, *e.g.*, *McGill v. Illinois Power Co.*, 18 Ill. 2d 242, 244 (1959). Addressing only one nonsentencing issue, we now remand the cause to the trial court with instruction to conduct an appropriate inquiry into defendant's *pro se* post-trial motion.

## BACKGROUND

The record contains the following pertinent and uncontested facts. Defendant was indicted in Cook County in two separate cases. In case No. 97—CR—1779, the charges arose from the September 3, 1996, fatal shooting and armed robbery of Lonnie Williams and the attempted shooting of Melanie Williams. In the case before us, No. 97—CR—1780, the charges arose from the November 21, 1996, shooting of Kimberly Fort.

Defendant waived a jury for both the guilt phase and the death sentencing hearing in each case. The court conducted separate bench trials to determine defendant's guilt.

The State's case in No. 97—CR—1779 included the following evidence. Melanie Williams and Lonnie Williams were business partners in an ice cream store in Chicago. On September 3, 1996, Lonnie and Melanie closed the store; Lonnie took with him a bag containing money from the store's sales for the week. They lived in the second-floor apartment of a two-flat building in Chicago. They arrived home at approximately 10:25 p.m. Melanie followed Lonnie toward the front porch. Defendant, a former employee, grabbed Melanie and put a handgun to her head. Defendant told her to be quiet.

Near the top of an inner stairway, Lonnie became aware of defendant's presence and turned to face him.

---

[1] We took with the case defendant's motion to withdraw certain sentencing issues. We now deny that motion as moot.

Lonnie pulled Melanie behind him. Defendant demanded money. Lonnie handed defendant the money from the store. Defendant then said, "You all shouldn't have done me like you did." Melanie then heard the gun discharge. Melanie ran inside her apartment, with defendant in close pursuit. Facing defendant, who was aiming the gun at her, Melanie backed up to a couch and fell on it. Defendant pulled the trigger three times, but the gun failed to discharge. Defendant turned and ran out of the apartment. Lonnie died from a gunshot wound to the face.

In the case before us, No. 97—CR—1780, the State's evidence against defendant, which included his statement to police, was as follows. Fort was defendant's girlfriend and they lived together. Beginning on the night of the Lonnie Williams shooting, law enforcement officials spoke with Fort regarding defendant's whereabouts. She cooperated with police and gave them another possible address for defendant and a photograph of him.

On November 21, 1996, at approximately 9 a.m., defendant returned to the house he shared with Fort. He was armed with a 12-gauge, double-barreled, sawed-off shotgun concealed under his coat. Defendant was armed that day because he had killed Lonnie Williams and people were trying to kill defendant in retaliation. He tried to open the door with his key, but Fort had changed the locks.

While defendant was breaking into the house, Fort escaped and ran down the street. Defendant chased and eventually caught Fort. He pulled her down the street toward the house. Defendant reasoned that Fort was afraid of him because she had told police about Lonnie Williams' murder. When they were near, defendant ordered her to walk down a side gangway and enter the house. While Fort was about 10 feet in front of defendant,

he shot her in the back, firing both barrels. Fort died from the shotgun blast.

At the close of the bench trial in this case, the court convicted defendant of the first degree murder and the aggravated unlawful restraint of Fort. Regarding the Williams shooting, the court convicted defendant of the first degree murder and armed robbery of Lonnie Williams and the attempted murder of Melanie Williams.

The trial court then held a joint death sentencing hearing. In this case, the court concluded that defendant was eligible for the death penalty, finding the presence of two statutory aggravating factors: defendant was convicted of murdering two or more individuals; and defendant murdered Fort with the intent to prevent her from testifying in a criminal prosecution or giving material assistance to the State. See 720 ILCS 5/9—1(b)(3), (b)(8) (West 1996). We note that the trial court also found defendant eligible for the death penalty for the Williams murder.

At the second stage of the joint death sentencing hearing, the court considered evidence in aggravation and mitigation. In this case, the court found: "[T]he aggravating factors presented are not—are not overcome by the mitigating factors," *i.e.*, that there were no mitigating circumstances sufficient to preclude imposition of the death penalty. The trial court accordingly sentenced defendant to death on the Fort murder conviction. Regarding the Lonnie Williams murder conviction, we note that the court found that the mitigating factors outweighed the aggravating factors. Accordingly, the court sentenced defendant to a prison term of natural life.

At the hearing on posttrial motions in the two cases, defense counsel informed the trial court that defendant had prepared a *pro se* motion for the appointment of counsel other than the public defender. The court

directed counsel to proceed with his motions for new trials and, afterwards, the court would consider defendant's *pro se* motion for the appointment of other counsel. The trial court then considered, and denied, defense counsel's motions for new trials in this case and in case No. 97—CR—1779.

Defendant's trial counsel then reminded the court that defendant's *pro se* motion for other counsel was yet pending. In response, the court stated:

"As to the pro se motion, I am assuming that I would allow the—I would be upon notice of appeal by—I assume is going to be filed in this case, I would appoint the state—appointment of state appellate defender, so there would be an appointment of different counsel which is which [*sic*] Mr. Moore is requesting."

The trial court next denied defense counsel's motion to reconsider the death sentence imposed on the Fort murder conviction. The following colloquy next occurred:

"[Defense counsel]: Judge, Mr. Moore has asked whether [*sic*] for a little clarification on the pro se motion. That is granted as to—

THE COURT: As to the Appellate—State Appellate Defender. I'd ask that the public defender do file the notice of appeal. At least as to the 1779, that is a life sentence. So I believe that would go to the Appellate Court as opposed to the Illinois Supreme Court. You can file that.

But upon filing that, the Appellate Defender would be appointed as counsel. As to both cases.

[Defense counsel]: Thank you, judge."

No further discussion was had, nor was any further action taken, on defendant's *pro se* motion.

The trial court then sentenced defendant on his non-murder convictions. In this case, for the aggravated unlawful restraint of Fort, the trial court imposed a five-year prison term. Regarding case No. 97—CR—1779, we note that the trial court sentenced defendant to 30-year prison terms on the convictions for the armed robbery of Lonnie Williams and the attempted murder of Melanie Williams.

Defendant appeals. Additional pertinent facts will be discussed in the context of the issues presented.

## ANALYSIS

Defendant raises several issues for review. His first claim is that the trial court erred in failing to consider his *pro se* posttrial motion for appointment of counsel other than the public defender. He asks us to remand the cause to the trial court for an appropriate inquiry into his *pro se* posttrial motion. We address only this issue, which is meritorious and dispositive.

We note at the outset our standard of review. The State contends that "the trial court properly exercised its discretion in denying defendant's motion to substitute counsel in view of the meritless nature of defendant's claims of ineffective assistance of counsel." However, as we will explain, the trial court neither "denied" defendant's *pro se* posttrial motion nor found the allegations therein to be "meritless." Rather, the trial court operated under the legal misapprehension that defendant's claim could be resolved by appointment of different counsel on appeal. A trial court must exercise its discretion within the bounds of the law. A reviewing court determines a legal question independently of the trial court's judgment. *People v. Williams*, 188 Ill. 2d 365, 369 (1999), quoting *In re Lawrence M.*, 172 Ill. 2d 523, 526 (1996).

During pretrial discovery, defendant repeatedly informed the trial court that he did not want his appointed trial counsel, an assistant public defender, to defend him. During an appearance on April 21, 1997, the following colloquy occurred:

"THE DEFENDANT: I don't want him defending me. May I speak to the judge?

THE COURT: You may if it doesn't concern the facts of the case.

THE DEFENDANT: I don't feel that he can defend me

in this case. He's not—he doesn't come to see me and he don't talk to me like he trying to help me. He act like he against me, and I don't feel that he can defend me in this case. My case is too serious.

THE COURT: I have had [the assistant public defender] on several cases in this courtroom. He is a very good attorney, from the top unit in the Public Defender's Office, the Murder Task Force. I can only appoint the Public Defender's Office, and that's where it's going to stay. I'm sure he will speak to you."

Nine months later, defendant's concerns had not been allayed.

On January 30, 1998, approximately one year prior to trial, defendant informed the trial court that he wanted to file a written motion for appointment of counsel other than the public defender. The following colloquy ensued:

"THE COURT: Well, I have appointed the public defender and have Murder Task Force and they are excellent attorneys. And I have had—I think [the assistant public defender] is an excellent attorney. You have a right to represent yourself but the only attorney I am appointing on this case is the public defender, so if you do not wish—I would speak with [the assistant public defender] but I'm not going to appoint outside counsel.

THE DEFENDANT: So I wouldn't need to file this paper?

THE COURT: You can file it so it's on the record, but if it gets to that point it is needed for appeal."

In his written *pro se* motion, defendant alleged that his appointed trial counsel: visited defendant in jail only a few times; failed to file various pretrial motions or investigate the facts; and advised defendant that his "first order of business was to effect the least possible sentence through plea bargaining." The record does not disclose any action taken by the trial court on defendant's *pro se* motion.

As earlier stated, defendant prepared a *pro se* post-trial motion for appointment of counsel other than the

public defender. As with his first motion, defendant's posttrial motion claimed that "no line of meaningful communication was established" between defendant and trial counsel, whose "entire attitude" showed that counsel was unconcerned with the defense of the case. Defendant repeated his allegations contained in his first *pro se* motion. He also alleged that trial counsel: wrongly advised defendant to waive a jury for trial and for sentencing and not to testify on his own behalf at trial; and failed to adequately cross-examine the State's witnesses where their testimony conflicted with police reports. Defendant also complained that the trial court denied his first motion for appointment of counsel other than the public defender "without a hearing or giving any reason."

We earlier quoted the entire discussion of record concerning defendant's *pro se* posttrial motion. The trial court's sole response to the motion was to appoint the State Appellate Defender as defendant's counsel on appeal.

In *People v. Krankel*, 102 Ill. 2d 181 (1984), the defendant's trial counsel failed to contact an alibi witness or to present an alibi defense at trial. The defendant raised a *pro se* posttrial challenge to his attorney's competence at trial. The parties agreed that the trial court should have appointed counsel, other than his originally appointed counsel, to represent defendant at the posttrial hearing regarding his claim of ineffective assistance. This court remanded the matter for a new hearing on the defendant's motion with newly appointed counsel. *Krankel*, 102 Ill. 2d at 187-89.

In interpreting *Krankel*, the following rule developed. New counsel is not automatically required in every case in which a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel. Rather, when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine

the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed. *People v. Chapman*, 194 Ill. 2d 186, 230 (2000); *People v. Bull*, 185 Ill. 2d 179, 210 (1998); *People v. Munson*, 171 Ill. 2d 158, 199-200 (1996); *People v. Nitz*, 143 Ill. 2d 82, 134 (1991) (and cases cited therein). The new counsel would then represent the defendant at the hearing on the defendant's *pro se* claim of ineffective assistance. *Munson*, 171 Ill. 2d at 200; *Nitz*, 143 Ill. 2d at 134-35. The appointed counsel can independently evaluate the defendant's claim and would avoid the conflict of interest that trial counsel would experience if trial counsel had to justify his or her actions contrary to defendant's position. *Chapman*, 194 Ill. 2d at 230; see generally 14B Ill. L. & Prac. *Criminal Law* § 578 (1999).

The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel. *People v. Johnson*, 159 Ill. 2d 97, 125 (1994). During this evaluation, some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim. Trial counsel may simply answer questions and explain the facts and circumstances surrounding the defendant's allegations. See *People v. Parsons*, 222 Ill. App. 3d 823, 829 (1991); *People v. Jackson*, 131 Ill. App. 3d 128, 139 (1985); see, *e.g.*, *Bull*, 185 Ill. 2d at 211. A brief discussion between the trial court and the defendant may be sufficient. See, *e.g.*, *Chapman*, 194 Ill. 2d at 228-29; *Munson*, 171 Ill. 2d at 200-01; *People v.*

*Williams*, 147 Ill. 2d 173, 252 (1991). Also, the trial court can base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face. *People v. Towns*, 174 Ill. 2d 453, 466 (1996); *Williams*, 147 Ill. 2d at 252-53.

In this case, it is quite clear from the record that the trial court was unaware of this rule. The trial court conducted no inquiry of any sort into defendant's allegations of ineffective assistance of counsel. Indeed, the record does not show whether the trial court ever read defendant's *pro se* posttrial motion. Rather, the court apparently concluded that defendant's claim of ineffective assistance of counsel could be resolved by the appointment of different counsel *on appeal*.

The law requires the trial court to conduct some type of inquiry into the underlying factual basis, if any, of a defendant's *pro se* posttrial claim of ineffective assistance of counsel. No such investigation occurred in this case. Accordingly, we must remand the cause to the trial court for that limited purpose.

The State contends that defendant waived this issue when he and his trial counsel "stood mutely and did nothing to request further inquiry." This contention lacks merit. It would be inappropriate for trial counsel to argue a motion that is predicated on allegations of counsel's own incompetence. See *Nitz*, 143 Ill. 2d at 135; see also *People v. Pope*, 284 Ill. App. 3d 330, 333 (1996); *People v. Jameson*, 155 Ill. App. 3d 650, 662-63 (1987). Further, a *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention, which the defendant did in this case. See, *e.g.*, *People v. Giles*, 261 Ill. App. 3d 833, 846-47 (1994); *People v. Finley*, 222 Ill. App. 3d 571, 576, 583-85 (1991). In any event, we note that trial counsel asked the trial court to

clarify its disposition of defendant's *pro se* posttrial motion.

The State continues: "Even, assuming, *arguendo*, that the trial court should have considered defendant's motion more fully, the meritless nature of defendant's claims would still remain." The State reasons that "[t]he insubstantial nature of defendant's claims would not have changed despite any procedural steps taken by the trial court, therefore, any error was harmless."

The State's contention misses the mark. Again, this is not a question of whether the trial court should have considered defendant's motion "more fully." Rather, the trial court did not consider defendant's motion at all. "While defendant's claims may be without merit, the trial court should have afforded the defendant the opportunity to specify and support his complaints. In short, the defendant's motion was precipitously and prematurely denied." *People v. Robinson*, 157 Ill. 2d 68, 86 (1993).

A trial court's failure to appoint new counsel to argue a defendant's *pro se* posttrial motion claiming ineffective assistance of counsel can be harmless beyond a reasonable doubt. *Nitz*, 143 Ill. 2d at 135. However, in *Nitz*, the trial court produced a record that demonstrated the meritless nature of defendant's claims. *Nitz*, 143 Ill. 2d at 135; see, *e.g., Chapman*, 194 Ill. 2d at 230 ("The record reveals that the trial court made a significant effort to explore the matters that defendant raised in the motion"); *Bull*, 185 Ill. 2d at 210-11 (noting that the trial court found defendant's allegations to be spurious only after hearing from defendant and his trial counsel); *Towns*, 174 Ill. 2d at 465-66 (noting that trial court not only considered and denied defendant's *pro se* posttrial motion, but further allowed defendant to file amended motion, which court considered and denied); *Munson*, 171 Ill. 2d at 201 ("The [trial] court made every effort to

ascertain the nature and substance of defendant's ineffectiveness claim"); *People v. Byron*, 164 Ill. 2d 279, 304-05 (1995) (noting that trial court heard defendant describe in detail the factual basis of claim, and that the court then concluded that defendant's claim was without merit); *Johnson*, 159 Ill. 2d at 125 ("the trial court made a significant effort to explore the matters raised in defendant's motion"); *Williams*, 147 Ill. 2d at 252-53 ("the trial court conducted a proper examination of the factual bases for defendant's claims" and found them to be meritless).

In contrast, in the present case, no record at all was made on defendant's claims of ineffective assistance of counsel. Therefore, unlike the above-cited cases, it is simply not possible to conclude that the trial court's failure to conduct an inquiry into those allegations was harmless beyond a reasonable doubt. See, *e.g.*, *People v. Jackson*, 243 Ill. App. 3d 1026, 1036-37 (1993). "In the absence of a ruling by the trial court on the defendant's *pro se* post-trial motion, we decline to consider its merits ***." *People v. Jackson*, 158 Ill. App. 3d 394, 401 (1987).

Accordingly, we conclude that the trial court erred in failing to conduct the necessary preliminary examination as to the factual basis of defendant's allegations against his appointed trial counsel. "[W]e emphasize that we are not remanding for a full evidentiary hearing and appointment of counsel on the issue of trial counsel's incompetence." *Parsons*, 222 Ill. App. 3d at 831. Rather, we remand the cause for the limited purpose of allowing the trial court to conduct the required preliminary investigation. If the court determines that the claim of ineffectiveness is spurious or pertains only to trial strategy, the court may then deny the motion and leave standing defendant's convictions and sentences. If the trial court denies the motion, defendant may still appeal his assertion of ineffective assistance of counsel along with his

other assignments of error. *Krankel*, 102 Ill. 2d at 189; see, *e.g.*, *People v. Bell*, 197 Ill. App. 3d 613, 618-19 (1990); *Jackson*, 158 Ill. App. 3d at 401-02; *Jameson*, 155 Ill. App. 3d at 663.

## CONCLUSION

For the foregoing reasons, we remand the cause to the circuit court of Cook County for proceedings consistent with this opinion.

*Remanded with directions.*