THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FAVIO TURSIOS, Defendant-Appellant.

Second District No. 2—02—1170

Opinion filed June 18, 2004.

G. Joseph Weller and Jack Hildebrand, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Stephen E. Norris and T. David Purcell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Favio Tursios, appeals from the trial court's order denying his motion to withdraw his guilty plea. We affirm.

Defendant was charged with six criminal offenses arising out of the stabbing death of Yensi Rodriguez. A conference pursuant to Supreme Court Rule 402 (177 Ill. 2d R. 402) was held during which the trial court stated that it would enter a sentence of 20 to 25 years if defendant pleaded guilty to one count of first degree murder (720 ILCS 5/9—1 (West 2000)). Defendant asked that he be given until the following morning "to think about it." The next day, December 11, 2001, he pleaded guilty to one count of first degree murder. Pursuant to the plea negotiations, the State recommended a sentencing cap of 30 years. Defendant was admonished with the aid of an interpreter, as he was not fluent in English. A presentence report was ordered, and the case was continued for sentencing.

The presentence report was not complete on the next court date of February 15, 2002. Defense counsel Theodore Potkonjak informed the court that, during the preparation of the report, defendant told the probation officer that he did not want to cooperate because he was not

guilty of first degree murder. He did not understand the procedures and thought that he had pleaded guilty to second degree murder. Defendant told Potkonjak that he wished to withdraw his guilty plea. Potkonjak did not think that he and his co-counsel, Scott Wineberg, could go forward with sentencing "because it puts us in the position that we have to ascertain whether or not there's a clear understanding of what he had pled guilty to." The court continued the matter for the filing of a written motion to withdraw the plea.

Counsel did not file a written motion. On the next court date, he informed the court that he had reviewed some of the transcripts regarding the guilty plea and discussed the plea with defendant, who no longer wished to withdraw the plea. When the court asked defendant, through an interpreter, if he had discussed this with his attorneys, defendant stated, "Yes, I would like to withdraw." Defense counsel then stated that he had "a bonafied [sic] doubt" about defendant's fitness to stand trial and requested a fitness evaluation. Counsel stated that, when he told things to defendant, "it seems to sink in, but it doesn't." Counsel wanted to clarify whether defendant truly could not understand the discussions regarding his plea or whether he was involved in "gamesmanship." Counsel also thought that the language barrier had something to do with the problem. The court did not find sufficient evidence of a *bona fide* dr ubt as to fitness and continued the case for preparation of the report and sentencing. The court stated:

> "Now it seems to me that every time Mr. Turcios [sic] comes into Court he still can't make up his mind as to what he wants s [sic] to do. Yet, when he is in jail speaking with his attorneys he's satisfied with what he did in court. And then he comes into court, and maybe it's the—you know, when it's happening in the courtroom he can't make up his mind. I didn't find that there were any [sic] anything [sic] about the way he was questioned or talked to that he didn't understand what's happening. It may just be how the words are used, but he's asked questions. He understands the legal process. He's been able to communicate with his attorneys, and the only thing that he can't do is make up his mind as to whether or not he wants this motion to be filed to withdraw his plea."

Potkonjak also informed the court that he was leaving his practice before the next court date and that Wineberg would continue defendant's representation.

Before the next court date, Wineberg sent an investigator from his office to speak with defendant. Defendant told the investigator that his attorneys did nothing for him and did not tell him that he was pleading guilty to first degree murder. He wanted a sentence of less

than 20 years in prison. Wineberg subsequently filed a motion to withdraw as attorney, citing a "total breakdown of communication." Wineberg stated that continued representation of defendant in pursuit of his motion to withdraw his plea would mean that Wineberg would have to allege the ineffectiveness of himself and Potkonjak, who had "since been bestowed a judicial robe." Further, he would still have to represent defendant at sentencing if a motion alleging his own ineffectiveness was denied. The trial court noted that defendant had never told Wineberg directly of any intent to allege ineffective assistance of counsel, nor had defendant informed the court of any such problem. The court continued the case for completion of the presentence report and recommended that Wineberg speak directly with defendant and "file whatever needs to be filed."

On the next court date, Wineberg stated that he had reviewed the transcripts of the Rule 402 conference and the plea, including the admonishments, and did not believe that a motion to withdraw defendant's guilty plea would be meritorious. The following colloquy then took place, with an interpreter present:

"THE COURT: Mr. Tursios, did you go over withdrawing your plea with Mr. Wineberg?

THE DEFENDANT: What? I didn't understand.

THE COURT: Did you talk to Mr. Wineberg about withdrawing or taking back your plea of guilty?

THE DEFENDANT: Yeah.

THE COURT: And you do not wish to do that? You wish to go forward with the sentencing today?

THE DEFENDANT: No, I just want to get the sentence now.

THE COURT: So you want to be sentenced today?

THE DEFENDANT: Yes."

Appended to the presentence report was a psychological evaluation by clinical psychologist Karen Chandry. Defendant told Chandry that he had trouble learning and concentrating in school when he was a child in Honduras. He also told of several untreated head injuries that he suffered as a child. As an adult, he traveled alone for four months through four countries to get to the United States. After he began to live with Yensi Rodriguez, the victim in this case, he began to use alcohol and marijuana. He was under the influence of both substances and did not know what he was doing when he stabbed Rodriguez during a fight. Since he was arrested, defendant suffered from post-traumatic stress disorder, resulting in nightmares of the offense and thoughts of suicide.

Chandry described defendant as cooperative with the evaluation process. Defendant "indicated by his questions and comments that he

was having difficulty comprehending questions asked him." While he appeared to have "cognitive defects complicated by depression," he demonstrated "no evidence of delusional thinking or any other indicators of a formal thought disorder." He was "alert and oriented to time, place, and person." His ability to concentrate "appeared compromised," his judgment and level of insight were assessed as "fair to poor," and his intellectual functioning was rated as "low average." He appeared to have problems with frustration and anger and was impulsive and unpredictable. Chandry recommended that defendant be evaluated by a psychiatrist "for the usefulness of psychotropic medication" and "observed for further suicidal ideation and intentions, particularly after his sentencing and after he is first transferred to the Illinois Department of Corrections."

Following arguments, the court sentenced defendant to 23 years in the Department of Corrections. Defendant subsequently filed a motion to withdraw his guilty plea, which was written by Wineberg. The motion alleged that "something was lost in the translation" by the interpreters involved in the case such that defendant was not aware that he was pleading guilty to first degree murder and that he could receive a sentence of no less than 20 years in prison. He also argued that he had a meritorious defense of self-defense and that his "wavering" on his guilty plea was evidence that "he was pushed into making a hasty decision to forego his right to trial." The trial court denied this motion after a hearing. This appeal followed.

■ Defendant first contends that the trial court erred by not ordering a fitness hearing. Due process prohibits prosecuting or sentencing a defendant who is not competent to stand trial. *People v. Sandham*, 174 Ill. 2d 379, 382 (1996). Fitness to stand trial requires that the defendant understand the nature and purpose of the proceedings against him and be able to assist in his defense. *Sandham*, 174 Ill. 2d at 382. Fitness refers to a person's ability to function in the context of a trial and does not refer to sanity or competence in other areas; a defendant can be fit for trial although his mind may be otherwise unsound. *People v. Easley*, 192 Ill. 2d 307, 320 (2000). A defendant is entitled to a fitness hearing only when a *bona fide* doubt arises about the defendant's fitness. *Easley*, 192 Ill. 2d at 318. While there are no fixed or immutable signs that invariably indicate the need for further inquiry, relevant factors that the trial court may consider include the defendant's irrational behavior, the defendant's demeanor in court proceedings, and any prior medical opinion on the defendant's competence to stand trial. *Easley*, 192 Ill. 2d at 319. Whether a *bona fide* doubt about a defendant's fitness has arisen is a matter within the trial court's discretion. *Sandham*, 174 Ill. 2d at 382.

■ Defendant argues that Potkonjak raised a *bona fide* doubt of fitness when he informed the trial court of his own *bona fide* doubt of fitness. We disagree. Potkonjak, while raising the specter of defendant's unfitness, also raised the possibility that defendant was engaged in "gamesmanship." Potkonjak also stated that he thought that the language barrier may have played a role in defendant's equivocation. In denying the motion for a fitness hearing, the court commented on defendant's behavior during the court proceedings and how he responded to questions while in court. The court also noted that "how the words are used" may have had an impact *vis-a-vis* the language barrier. The court found that defendant understood the proceedings and communicated with his attorneys. Defendant himself brought up the difference between first and second degree murder and the possible sentences involved. While defense counsel may have used the magic words of *bona fide* doubt, we conclude that the trial court did not err in refusing to order a fitness hearing on this basis.

Defendant also argues that the psychological evaluation raised a *bona fide* doubt of his fitness. We disagree. Chandry noted defendant's many difficulties, including prior head injuries and problems with comprehension, impulsive behavior, concentration, post-traumatic stress, and substance abuse. However, Chandry also noted that defendant was "alert and oriented to time, place, and person" and did not demonstrate any evidence of "delusional thinking or any other indicators of a formal thought disorder." Significantly, Chandry did not opine that defendant's problems would have prevented him from understanding the nature and purpose of the proceedings against him and being able to assist in his own defense. This report was one factor that the trial court could consider in determining defendant's competence to stand trial. See *Easley*, 192 Ill. 2d at 319. The trial court clearly considered the report, along with defendant's behavior and demeanor in the courtroom. While defendant may have had difficulty making up his mind and sticking to his decision, we cannot conclude that the trial court abused its discretion by not ordering a fitness hearing.

■ Defendant next contends that the trial court erred in failing to conduct a preliminary inquiry or make any ruling when it was informed that defendant wished to withdraw his plea on the basis of ineffective assistance of counsel. Defendant claims that there were two occasions where the trial court was put on notice that he intended to raise ineffective assistance of counsel in his motion to withdraw his guilty plea. However, we are not persuaded that, in either instance, defendant actually expressed an intent to allege ineffective assistance of counsel; therefore, the trial court did not err in failing to investigate

the nonexistent claims. Defendant first cites to the February 15, 2002, court date, when Potkonjak first informed the court that defendant wanted to withdraw his plea. Defendant argues:

"Potkonjak suggested to the judge that it would not be proper for either Weinberg [*sic*] or himself to continue representing defendant because defendant wanted to withdraw his plea on the basis that he had been led to believe that he had pled guilty to second-degree murder."

Our review of the transcript of the proceedings on that day reveals no mention of ineffective assistance of counsel. Potkonjak was merely stating that they could not proceed with sentencing before they could "ascertain whether or not there's a clear understanding of what he had pled guilty to." Defendant could have misunderstood for reasons other than attorney incompetence. Defendant's lack of English-speaking skills are well documented. Clearly, there was no mention of the intent to allege ineffective assistance of counsel in this instance.

Defendant next cites to Wineberg's motion to withdraw as defense counsel. In the motion, Wineberg clearly raised the issue of ineffective assistance of counsel. However, Wineberg raised the issue without speaking directly with defendant to learn his intentions. Instead, the issue was raised based on an investigator's interview with defendant. The trial court recommended that Wineberg speak directly with defendant and then "file whatever needs to be filed." Again, there was no clear indication that defendant planned to allege ineffective assistance as a basis for withdrawing his plea. A hearsay statement is not sufficient to apprise the court of a defendant's true intentions.

The dissent cites to *People v. Moore*, 207 Ill. 2d 68 (2003), and *People v. Friend*, 341 Ill. App. 3d 139 (2003), to support its argument that the trial court should have inquired further into defendant's claims of ineffective assistance of counsel. However, these cases are distinguishable. In *Moore*, the defendant actually filed a *pro se* motion seeking appointment of new counsel, on which the trial court failed to rule, even after defense counsel brought the motion to the court's attention. *Moore*, 207 Ill. 2d at 73-74. The defendant also specifically told the court of his complaints against counsel. *Moore*, 207 Ill. 2d at 75-76. In *Friend*, the presentence report contained a five-page statement by the defendant alleging specific actions by defense counsel, including the failure of counsel to file any motions after charging the defendant $10,000 to file motions, leaving the defendant without funds to fight the case further. *Friend*, 341 Ill. App. 3d at 143. Here, defendant never filed a *pro se* motion with allegations into which the court could inquire. Defendant never told the court of any problems he had with his counsels' representation. The presentence report

contained only a one-sentence generic reference to complaints that defendant made to a probation officer at the time of the preparation of the report and several months earlier. None of the complaints, in any event, specifically alleged ineffective assistance of counsel. The record in this case simply does not show that the trial court was presented with specific allegations of ineffective assistance of counsel such that it was required to inquire further. A trial court is not required to chase after hearsay and rumors. Therefore, we find no error here.

For these reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

HUTCHINSON, J., concurs.

JUSTICE BOWMAN, dissenting:
I respectfully dissent in part.

With respect to defendant's contention that the trial court failed to conduct a preliminary inquiry into his claims of ineffective assistance of counsel, I disagree with the majority's conclusion that the "trial court did not err in failing to investigate the nonexistent claims." 349 Ill. App. 3d at 131-32. Rather, a preliminary investigation was not only warranted, but required in this case.

Defendant, from Honduras, speaks only a limited amount of English. An interpreter aided his communication with the court. When the court questioned him, defendant gave several unusual responses that evinced a lack of understanding of the proceedings. On December 10 and 11, 2001, while in court for pretrial proceedings, the trial court held a Rule 402 conference (see 177 Ill. 2d R. 402) with the State and defendant's assigned attorneys from the public defender's office, Theodore Potkonjak and Scott Wineberg. When the trial court asked defendant if his attorneys had explained what a Rule 402 conference entails, defendant responded, "What should I say, yes or no?" After the trial court repeated the question, defendant stated, "I really don't understand. I don't know." The trial court then attempted to describe the purpose of a Rule 402 conference. Defendant said that he understood, "[m]ore or less."

Following the Rule 402 conference, Potkonjak informed the trial court that he had spoken with defendant about the conference and advised him that a plea could be arranged with a recommended sentencing cap of 30 years for first degree murder, likely resulting in a sentence of 20 to 25 years. The trial court then asked defendant if Potkonjak had explained the plea offer and defendant replied, "That I am

not guilty?" In response to defendant's apparent confusion, the trial court described to him in detail what happened during the conference. Defendant then agreed that Potkonjak had explained to him the results of the Rule 402 conference. Potkonjak requested that defendant be given until the following day to decide if he wanted to accept the plea offer.

The next day, the trial court asked defendant if he wished to accept the plea, with a sentencing cap of 30 years, to which defendant replied, "A minimum of 30 years?" After the court attempted to explain the meaning of a sentencing cap, defendant stated "My attorney just told me that it's less than 25 years. I can't take 30 years. That's too much." The court attempted to explain the plea offer once more. Following the court's admonishment, defendant accepted the plea offer and pleaded guilty to first degree murder.

On February 15, 2002, the parties appeared in court for defendant's sentencing, but the presentence investigation report (PSI) was unfinished. Potkonjak informed the trial court that he had received a call from Dana Paschall, the probation officer preparing the PSI. She advised Potkonjak that, when she attempted to interview defendant for the PSI, defendant refused to cooperate. Defendant told Paschall that he did not understand the plea, he was not guilty of first degree murder because he acted in self-defense, he did not wish to plead guilty to first degree murder, and he pleaded with the understanding that he was pleading guilty to second degree murder. Potkonjak continued by informing the court that he had spoken with defendant and that defendant wanted to withdraw his plea. The trial court directed Potkonjak to prepare a written motion.

The parties returned to court on March 15, 2002, and Potkonjak informed the court that defendant had decided against withdrawing his plea and wished to go forward with sentencing. The court asked defendant whether he wanted to withdraw his guilty plea. Defendant replied, "Well, yes. Yes, I would like to withdraw." Potkonjak then said that "this keeps going on and on and on, and he's just not—we tell him something, and it seems to sink in, but it doesn't." However, the trial court denied a request by Potkonjak for a fitness evaluation, finding no *bona fide* doubt of fitness. Potkonjak further related to the court that he was leaving the active practice of law and that Wineberg alone would be handling defendant's case.

Two weeks later, on April 2, Wineberg filed a motion to withdraw as counsel. In the motion, Wineberg stated that Potkonjak had become a circuit court judge and that "defendant asserts that his lawyers have failed to provide effective representation and that he now wishes to withdraw his plea of guilty and proceed to a jury trial." The motion further provided:

"The defendant and counsel have come to an impasse and there has been a total breakdown in communication. The defendant expressed that he no longer wishes for the Public Defender to represent him in this case and that he would be asking the Court to appoint another attorney to represent him.

Further representation of this defendant in pursuit of his motion to withdraw his plea means that counsel will have to allege the ineffectiveness of himself and a man who has since been bestowed a judicial robe. If the defendant has a motion to withdraw his guilty plea denied, counsel will be left in the precarious position of representing the defendant for sentencing purposes. The 'cleaner' solution is to appoint outside counsel at the earliest juncture."

On April 8, Wineberg appeared in court on his motion to withdraw as counsel. He related to the court that, while he was on vacation, he sent an investigator from his office to meet with defendant. During defendant's conversation with the investigator, defendant claimed that his attorneys did not help him, he did not understand that he pleaded guilty to first degree murder, he wanted a prison term of less than 20 years, and he refused to plead guilty to first degree murder. Wineberg asserted that he could no longer assist defendant because defendant's allegations of ineffective assistance of counsel created a conflict of interest. The trial court responded that it had not received "anything" directly from defendant. The court directed Wineberg to speak with defendant and "file whatever needs to be filed." Following the April 8 appearance, Wineberg did not file any further motions before defendant appeared for sentencing on April 19.

On April 19, Wineberg informed the court that defendant wanted to proceed with sentencing. With respect to defendant's past discussions and intimations regarding his desire to pursue a motion to withdraw his plea, Wineberg asserted that such a motion would not be "meritorious." The trial court then asked defendant if he discussed withdrawing his plea with Wineberg. Defendant initially replied, "What? I didn't understand." After the trial court repeated the question, defendant acknowledged that he had discussed withdrawing his plea with Wineberg. The court next asked defendant if he wished to be sentenced today. Defendant responded, "No, I just want to get the sentence now." He subsequently said "Yes" when the court rephrased its question regarding defendant's desire to proceed with sentencing. Later, the court informed defendant that he had the right to speak with the court about any subject he wished. Defendant responded, "Yes. I just wanted to know how much the time is going to be for the sentence. I wanted to know the time." The court then asked defendant if he had anything else he wanted to say, to which defendant remarked,

"No. Just that. There is nothing more else [*sic*] to say." The court sentenced defendant to 23 years in prison.

It is important to note that on the day of sentencing, the trial court did not inquire about the allegations of ineffective assistance of counsel contained in Wineberg's April 2 motion to withdraw as counsel. Moreover, in the PSI that Paschall prepared, she stated:

> "On March 15, 2002, the defendant indicated he did not want to file a formal motion to reconsider his plea and agreed to proceed with this investigation. However, when probation attempted to interview the defendant following his last court appearance, he again refused to participate and expressed the same protests as before."

Defendant's prior protests included his claims that he did not understand the plea, he was not guilty of first degree murder because he acted in self-defense, he did not wish to plead guilty to first degree murder, and he pleaded with the understanding that he pleaded guilty to second degree murder.

The PSI also included the psychological evaluation of Dr. Karen Chandry. According to Dr. Chandry, defendant conveyed to her that he was often depressed and thought about committing suicide "on and off" since his arrest. Dr. Chandry indicated that defendant experienced "cognitive defects complicated by depression" and that his "level of intellectual functioning is estimated to be low average," his ability to concentrate is "compromised," and his judgment and level of insight "were assessed as ranging from fair to poor."

On May 5, defendant, acting *pro se*, sent a letter to Judge Victoria A. Rossetti requesting an extension of time to file his appeal. He also sought transcripts and the aid of an attorney. Wineberg appeared in front of Judge Rossetti on May 29 on defendant's *pro se* request for an extension of time to file his appeal. Defendant was not present at the May 29 proceeding. In fact, defendant did not attend any of the proceedings that occurred after his sentencing on April 19. He was located at Stateville Correctional Center in Joliet. Wineberg explained to the court that he had been shown defendant's letter to Judge Rossetti. Wineberg said that he did not know why defendant did not contact him directly. The trial court told Wineberg to contact defendant and figure out what defendant wanted.

Wineberg appeared again in court on June 19 on defendant's request for an extension of time to file an appeal. Wineberg related to the trial court that he had sent letters to defendant on May 29 and June 7, inviting defendant to call his office and set forth the reasons why he believed the plea should be withdrawn. However, defendant never responded. The trial court continued the proceeding until July 19 to give defendant more time to respond.

On July 19, Wineberg informed the court that he had received a letter from defendant on July 2. According to Wineberg, in the letter, defendant appeared to want to withdraw his plea for two reasons. First, defendant wished to claim self-defense. Second, defendant said that he pleaded guilty because he lacked an appropriate understanding of the law. Wineberg said that he felt the court had adequately explained everything to defendant. Wineberg continued that he assumed defendant was requesting that he file a motion to withdraw his plea. Wineberg stated, "I will do so because that is what he wants even though I don't think that its [sic] meritorious. *** But in light of his other contention that may assert ineffectiveness, and I don't know if that's explicitly what he is saying or implicitly, perhaps other counsel should be appointed to investigate that claim." The court told Wineberg that he should do whatever he thought was required. Then, after Wineberg again questioned the merit of the motion, the court instructed him to explain his misgivings to defendant, explore the allegations with him, and if conflict issues arose, bring them before the court for appointment of conflict counsel.

On August 16, Wineberg appeared in court and related that he had attempted to contact defendant following the July 19 proceedings, but had not heard back from him. Wineberg said that, in the interests of justice, he had prepared a written motion to withdraw defendant's plea with the contentions of error contained in defendant's July 2 letter. I note that the July 2 letter is not included as part of the record on appeal. The court permitted Wineberg to file the motion and set a hearing date. The motion alleged:

"The Defendant is neither a citizen born or naturalized in the United States nor a resident alien in the United States and, as such, is not familiar with the criminal justice system in this country.

All communication with the Defendant has been with the aid of an interpreter, and something was lost in the translation such that the Defendant believes he was not made aware that he was pleading to first degree murder and/or that he could receive no less than 20 years in the Department of Corrections for such a plea.

The Defendant did not knowingly and voluntarily waive his rights appurtenant with a trial.

The Defendant believes that the amount of wavering he did on and around the day of his guilty plea, recalling that this matter was set for trial at the time plea negotiations began in earnest and the Court conducted a R. 402 conference, indicate that he was pushed into making a hasty decision to forego his right to trial and that it was error for the Court to allow him to do so.

The Defendant maintains that he has a meritorious defense, and a scar on his torso to support his claim that he acted in self-defense

and that, therefore, he would be guilty of no more than Second Degree Murder."

On October 2, the trial court conducted a hearing on defendant's August 16 motion to withdraw his plea. Wineberg stated that he had corresponded with defendant by mail and had last received a letter from defendant on September 23. Wineberg indicated that he did not have anything further to add to the motion to withdraw the plea. He said nothing about allegations of ineffective assistance of counsel, nor did the trial court ask Wineberg about the possible allegations of ineffective assistance of counsel that were discussed on July 19. The State argued that everything was done very carefully and thoroughly to explain the situation to defendant and that he knowingly and intelligently waived his rights. Wineberg did not offer any rebuttal, but instead rested on his written motion. After recounting the proceedings, the trial court denied the motion, concluding that defendant knowingly and intelligently entered the plea.

Recently, in *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003), the supreme court reiterated that, when a defendant presents a *pro se* posttrial ineffective assistance of counsel claim, new counsel is not automatically required. Rather, the trial court should first examine the factual basis of the defendant's claim. *Moore*, 207 Ill. 2d at 77-78. The trial court may deny the *pro se* motion if the court determines that the claim lacks merit or pertains only to matters of trial strategy. *Moore*, 207 Ill. 2d at 78. However, new counsel should be appointed if the allegations show possible neglect of the case. *Moore*, 207 Ill. 2d at 78. "The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *Moore*, 207 Ill. 2d at 78.

In *Moore*, the trial court labored under a misapprehension that the defendant's *pro se* claim of ineffective assistance of counsel could be resolved simply by appointing appellate counsel to address the defendant's grievance on appeal. *Moore*, 207 Ill. 2d at 77-79. The supreme court rejected the State's argument that the defendant waived the issue when he and his trial counsel " 'stood mutely and did nothing to request further inquiry.' " *Moore*, 207 Ill. 2d at 79. The supreme court observed that it would be inappropriate for the trial counsel to argue a motion that is predicated on allegations of counsel's own incompetence. *Moore*, 207 Ill. 2d at 79. Pertinent to the case at bar, the supreme court stated that "a *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention." *Moore*, 207 Ill. 2d at 79. Where the defendant's allegations have been brought to the trial court's attention, the supreme court

emphasized that the "law requires the trial court to conduct some type of inquiry into the underlying factual basis." *Moore*, 207 Ill. 2d at 79.

In another pertinent case, we addressed a situation wherein a trial court denied a defendant's motion to withdraw his plea of guilty to charges of possessing a controlled substance with the intent to deliver. *People v. Friend*, 341 Ill. App. 3d 139, 140 (2003). In *Friend*, the defense counsel filed the motion to withdraw the defendant's guilty plea, alleging, *inter alia*, that the defendant had been " 'forced into a plea of guilty.' " *Friend*, 341 Ill. App. 3d at 140. At a hearing, the defense counsel explained that he had filed the motion based on the defendant's statements in the presentence report. *Friend*, 341 Ill. App. 3d at 140. Those statements included the defendant's claims that he had been " 'blackmailed' " into pleading guilty and that he questioned the quality of defense counsel's representation. *Friend*, 341 Ill. App. 3d at 140.

The defense counsel invited the trial court to question the defendant about his comments. However, the court refused, stating that the motion lacked any specific allegations to show the plea was coerced. *Friend*, 341 Ill. App. 3d at 140. The trial court thus denied the motion because it did not believe that the defendant " 'was operating under any type of misapprehension of law or fact.' " *Friend*, 341 Ill. App. 3d at 140. The trial court concluded that the defendant had made the statements because he was seeking leniency. *Friend*, 341 Ill. App. 3d at 140. The defendant renewed the motion after he was sentenced, but the court again denied it. *Friend*, 341 Ill. App. 3d at 140.

We held that the defense counsel should have moved to withdraw as counsel when he realized that the defendant was questioning his professional judgment. *Friend*, 341 Ill. App. 3d at 141. More important to the case *sub judice*, the State argued that the trial court independently evaluated the defendant's allegations of ineffective representation. *Friend*, 341 Ill. App. 3d at 141. We held that it was clear that the trial court did not adequately investigate the defendant's claims. *Friend*, 341 Ill. App. 3d at 142. Moreover, we determined that it was irrelevant whether the defense counsel or the defendant brought the allegations to the trial court's attention. *Friend*, 341 Ill. App. 3d at 142.

In the present case, I disagree with the majority's characterization of defendant's claims as "nonexistent." 349 Ill. App. 3d at 132. Not only did defendant face a language barrier, but he experienced "cognitive defects complicated by depression," his "level of intellectual functioning [was] estimated to be low average," his ability to

concentrate was "compromised," and his judgment and level of insight "were assessed as ranging from fair to poor." Moreover, during the proceedings, defendant made several unusual remarks and provided confusing answers to many questions posed by the trial court.

On February 15, 2002, Wineberg told the court that, based on a conversation between Paschall and defendant, defendant claimed that he did not understand the plea and entered it against his wishes. On March 15, defendant told the court that he did not want to withdraw his plea, but started off by stating, "Well yes. Yes, I would like to withdraw." Potkonjak then expressed to the court the difficulty he was having communicating with defendant.

In the April 2 motion to withdraw as counsel, Wineberg stated that defendant asserted that Wineberg and Potkonjak failed to provide effective representation and that defendant wished to withdraw his plea. The motion was based on a conversation an investigator from Wineberg's office had with defendant in which defendant claimed that his attorneys did not help him and that he did not understand the plea and entered it against his wishes. However, at the next court appearance, defendant's April 19 sentencing hearing, the court did not inquire into the allegations contained in the April 2 motion. I believe that the court was derelict in not inquiring into these prior allegations, in light of Paschall's comments in the PSI that, between the March 15 appearance and the April 19 hearing, defendant again told Paschall that he did not understand the plea and entered it against his wishes. Moreover, defendant's repeated demands at the sentencing hearing to just "know the time" indicate a wearied acquiescence to the process, which should have further prompted the court to explore the prior allegations.

Beyond the problems surrounding the April 19 sentencing hearing, in defendant's May 5 letter requesting an extension of time to appeal, defendant requested the assistance of an attorney. However, when Wineberg attempted to contact him, defendant did not respond until July 2. In his response, defendant asserted that he did not understand the law when he entered the plea. Based on his prior dealings with defendant, evidenced in particular by the April 2 motion to withdraw as counsel, Wineberg recognized that the effectiveness of his representation was probably being questioned and he conveyed his concerns to the trial court. On August 16, Wineberg informed the court that he had not heard from defendant since July 2. During this time, Wineberg never clarified what defendant specifically alleged in his letter even though Wineberg was aware that defendant was probably questioning his performance. Nonetheless, Wineberg, with the approval of the court, filed a motion to withdraw defendant's plea.

The August 16 motion to withdraw defendant's plea did not allege ineffective assistance of counsel, which Wineberg could not properly allege anyway because of conflict issues. However, the motion stated that defendant was "pushed into making a hasty decision," but it did not say who pushed him. Then, at the October 2 hearing on the motion to withdraw the plea, neither Wineberg, the trial court, nor the State spoke a single word about the allegations of ineffective assistance of counsel or who "pushed [defendant] into making a hasty decision." In fact, by this juncture, Wineberg was responsible for advocating a motion that three times he referred to as lacking merit. At the hearing, he did not give any oral argument, but simply rested upon the written motion.

Based on my review of the record in this matter, I conclude that defendant's allegations of ineffective representation were sufficiently brought to the attention of the trial court to require a preliminary investigation. However, as the proceedings unfolded, defendant's allegations were either forgotten, ignored, or swept under the rug. The end result is that defendant has been denied a proper judicial inquiry into the underlying factual basis of his claims.

In conclusion, since we do not have a clear understanding of what occurred during the conversations and correspondences between defendant and his attorneys, Potkonjak and Wineberg, no clear record exists on appeal to allow us to directly assess defendant's claims of ineffective assistance of counsel. Thus, I would remand. See *Moore*, 207 Ill. 2d at 81-82; see also *Friend*, 341 Ill. App. 3d at 143. However, I would not remand for a full evidentiary hearing and appointment of counsel on the issue of trial counsel's competence. See *Moore*, 207 Ill. 2d at 81. Rather, if, after the trial court performs the requisite preliminary investigation, it determines that the claims have merit, new counsel should be appointed and defendant should be allowed to pursue his motion to withdraw his plea, based on his allegations of ineffective assistance of counsel. See *Moore*, 207 Ill. 2d at 81. If defendant's claims are spurious or pertain only to matters of strategy, the trial court should simply leave standing defendant's conviction and sentence, and defendant could pursue on appeal his claims of ineffective assistance of counsel. See *Moore*, 207 Ill. 2d at 81.

For the aforementioned reasons, I would reverse and remand for further proceedings.