NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220555-U

NOS. 4-22-0555, 4-22-0556 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 7, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Stephenson County |
| TARRONE J. JACKSON, | ) | Nos. 20CF55 |
| Defendant-Appellant. | ) | 20CF132 |
| | ) | |
| | ) | Honorable |
| | ) | Michael Paul Bald, |
| | ) | Judge Presiding. |

_____

JUSTICE DOHERTY delivered the judgment of the court.
Justices Cavanagh and Zenoff concurred in the judgment.

**ORDER**

¶ 1      *Held*:   We grant appointed counsel's motion to withdraw and affirm the trial court's
judgment where no meritorious issues could be raised on appeal.

¶ 2      This case comes to us on the motion of the Office of the State Appellate Defender

(OSAD) to withdraw as counsel on the ground no meritorious issue can be raised on this appeal

following the limited remand for a preliminary *Krankel* hearing. See *People v. Krankel*, 102 Ill.

2d 181 (1984). We grant OSAD's motion and affirm the trial court's judgment.

¶ 3                                I. BACKGROUND

¶ 4      In August 2020, defendant Tarrone J. Jackson entered into a negotiated guilty plea

to two counts of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2020))

in Stephenson County case No. 20-CF-55 (docketed as appellate court case No. 4-22-0555) and

one count of unlawful delivery of a controlled substance within 500 feet of a school (720 ILCS

570/407(b)(2) (West 2020)) in Stephenson County case No. 20-CF-132 (docketed as appellate court case No. 4-22-0556). In exchange for his plea, the State agreed to recommend that defendant be sentenced to one year in prison for each unlawful possession count and seven years' imprisonment for the unlawful delivery count, with each sentence to run concurrently to the others.

¶ 5        At the August 6, 2020, plea hearing, the trial court questioned defendant, who stated he understood the rights he was waiving and the terms of his plea agreement. The court asked if defendant was satisfied with the work of his attorney, and the following colloquy occurred:

"THE DEFENDANT: I haven't really had a chance to talk to him, yeah.

THE COURT: Oh, you haven't. Okay. Do you wish to have more time to speak with him?

THE DEFENDANT: No.

* * *

THE COURT: Okay. So here—here's the question, because this is important, you have to have a chance to be able to talk to your attorney about this and everything to understand all the terms, do you want more time to talk with him and make sure you understand this?

THE DEFENDANT: No, I don't now.

THE COURT: You don't want to.

THE DEFENDANT: Correct.

THE COURT: You—you want to proceed forward with this plea agreement then?

THE DEFENDANT: Yeah."

After hearing the factual basis, the court accepted defendant's plea agreement and sentenced defendant pursuant to it.

¶ 6 On August 17, 2020, defendant filed a motion to withdraw his guilty plea in each case, asserting he "did not knowingly, intelligently, and voluntarily waive his rights to [a] jury trial." Defendant further asserted he did not "fully understand or comprehend" the trial court's admonishments. At the hearing on defendant's motions, defendant testified, "I didn't really have enough time to really discuss the case with [trial counsel] without fully understanding." Defendant also explained he was "nervous" when the court was asking him questions at the plea hearing, but he could not remember what questions he did not understand because he had not reviewed the transcripts. The court continued the hearing so defendant could review the transcripts.

¶ 7 At the continued hearing, defendant testified he did not have enough time to go over his case with counsel. On cross-examination, the State asked defendant about the trial court's admonishments:

"Q. [T]he Judge asked you, is that the charge to which you're entering a plea of guilty to and you say, yeah. *** Then the Judge asked you, are those the potential penalties here in regard *** to this, do you understand that, and you said, yes, sir. Is there something wrong about that?

A. I didn't understand it and I was just agreeing.

Q. Okay. But you did say that you understood it though at the time?

A. Yeah, which I didn't though."

The defendant expressed that he agreed to, but did not understand, all of the court's admonishments, explaining that he felt pressured and nervous at the time he entered his plea.

¶ 8　　　　　　　The trial court denied defendant's motions to withdraw his guilty plea, finding defendant declined several opportunities to speak with his counsel.

¶ 9　　　　　　　Defendant appealed, arguing only that the trial court should have conducted a *Krankel* inquiry on defendant's claim of ineffective assistance of trial counsel at the hearing on his motion to withdraw his guilty plea. The appellate court agreed and remanded for the limited purpose of conducting a *Krankel* inquiry. *People v. Jackson*, 2022 IL App (2d) 200730-U, ¶ 14.

¶ 10　　　　　　On remand, the trial court conducted a *Krankel* inquiry over two hearings. We summarize the representations of defendant and trial counsel. According to defendant, he asked counsel to do several things, including secure a bond reduction, secure a better plea agreement, and "file motions." Defendant claimed counsel failed to communicate with him and "rushed" him through the process. Defendant also claimed counsel was giving him "dirty looks" when he said on the witness stand he felt the case was a "public lynching."

¶ 11　　　　　　In response to questioning by the trial court, trial counsel explained he spoke with defendant numerous times over the phone, as in-person meetings were limited due to COVID-19 restrictions. Counsel discussed the plea deal with defendant, and defendant indicated he wanted to accept the deal. He also explained that he spoke by phone with defendant and answered his questions on several of the many times defendant called his office. Moreover, counsel argued for a reduction in defendant's bond and also filed the motions to withdraw guilty plea at defendant's request. Counsel denied giving defendant a "dirty look or anything like that."

¶ 12　　　　　　The trial court found "a total lack of any showing that there was neglect of this file by the attorney" and declined to appoint new counsel.

¶ 13　　　　　　Defendant filed timely notices of appeal in both cases, and the trial court appointed OSAD to represent defendant. This court, on OSAD's motion, consolidated the appeals for

disposition. In October 2022, OSAD filed a motion for leave to withdraw, asserting no meritorious claim can be raised on appeal. This court allowed defendant leave to file additional points and authorities by November 30, 2022. Defendant has not done so.

¶ 14                                    II. ANALYSIS

¶ 15         OSAD contends no meritorious argument can be raised on appeal. In so arguing, OSAD correctly asserts that, given the procedural posture of this case, the only issues defendant may raise are compliance with the remand order and the denial of new counsel following the *Krankel* hearing. See *People v. Jackson*, 182 Ill. 2d 30, 88-89 (1998) ("Where a defendant appeals, the reviewing court remands, and the defendant appeals again, the issues which that defendant may raise on the second appeal are limited to those which arose in the remand proceedings."). Therefore, OSAD asserts the only potential issues it could raise are whether the trial court (1) properly conducted the *Krankel* inquiry on remand and (2) erred in denying to appoint counsel after the inquiry.

¶ 16         The only issue to be resolved in a *Krankel* inquiry is whether to appoint independent counsel to represent a defendant on his claims of ineffective assistance of counsel. *People v. McGath*, 2017 IL App (4th) 150608, ¶ 51. To determine whether a defendant is entitled to the appointment of counsel, the trial court must first determine the factual basis of the defendant's claims. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). The court may determine the factual basis by (1) questioning the defense counsel regarding the facts and circumstances of the claim, (2) discussing the issue with the defendant, or (3) considering the claim based on its own knowledge of the performance of counsel and the sufficiency of the allegations. *Id.* 78-79. If the court determines the defendant's claims lack merit or pertain only to matters of trial strategy, then

new counsel is not necessary. *People v. Roddis*, 2020 IL 124352, ¶ 35. "However, if the allegations show possible neglect of the case, new counsel should be appointed." *Moore*, 207 Ill. 2d at 78.

¶ 17 The question of whether the court conducted an adequate *Krankel* inquiry is reviewed *de novo*. *Roddis*, 2020 IL 124352, ¶ 33. If the trial court properly conducted the *Krankel* hearing and reached a determination on the merits of the defendant's ineffectiveness claims, we reverse only where the court's determination was manifestly erroneous. *People v. Jackson*, 2020 IL 124112, ¶ 98. "Manifest error is error that is clearly evident, plain, and indisputable." *Id.*

¶ 18 Here, the record demonstrates the trial court followed proper procedure when complying with the remand order. The court asked defendant to explain his claims of ineffective assistance, including asking defendant clarifying questions to make sure the court fully understood defendant's claims. The court made sure defendant had ample opportunity to raise any claim of possible neglect. After determining the extent of defendant's claims, the court thoroughly questioned counsel as to each of the claims. After questioning counsel, the court allowed defendant a final opportunity to speak. The court considered whether "the inquiry reveal[ed] possible neglect," which is the proper inquiry at a *Krankel* hearing. See *Moore*, 207 Ill. 2d at 78. Accordingly, we agree with OSAD no meritorious argument can be raised on defendant's behalf on appeal to show the trial court failed to conduct a proper *Krankel* hearing.

¶ 19 As to the trial court's decision to decline to appoint new counsel, the court addressed defendant's complaints that counsel (1) failed to seek a bond reduction, (2) failed to negotiate a better plea deal, (3) did not adequately communicate with defendant, and (4) failed to "file motions." The court determined that there was no showing of possible neglect. The record establishes counsel successfully argued a motion to reduce bond in case No. 20-CF-55. Counsel testified that, when he brought the plea deal to defendant, defendant readily accepted it. Counsel

spoke with defendant on several occasions. Defendant would frequently call counsel's office and counsel would answer any of his questions. Finally, despite several opportunities, defendant never offered any specifics on what "motions" would have been appropriate to file. Defendant's claims raised no possibility of neglect, and we see no meritorious argument the court erred, let alone manifestly erred, in declining to appoint new counsel. See *Jackson*, 2020 IL 124112, ¶ 98.

¶ 20 Where the trial court provided defendant an appropriate *Krankel* inquiry and correctly declined to appoint new counsel, we agree with OSAD no meritorious issue can be raised on appeal in either case No. 20-CF-55 or No. 20-CF-132.

¶ 21 III. CONCLUSION

¶ 22 For the reasons stated, we grant OSAD's motion to withdraw and affirm the trial court's judgment.

¶ 23 Affirmed.