2020 IL App (2d) 170999-U
No. 2-17-0999
Order filed February 25, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 12-CF-1735 |
| DONALD HARVEY, | ) ) ) | Honorable Randy Wilt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court adequately inquired under *Krankel* into the basis for defendant's claim of ineffectiveness of trial counsel, and defendant is not entitled to further inquiry, as the court consistently and thoroughly addressed defendant's repeated complaints of ineffectiveness throughout the proceedings.

¶ 2    Following a jury trial, defendant, Donald Harvey, was convicted of attempted first-degree murder (720 ILCS 5/9-1(a)(1) (West 2012); 730 ILCS 5/5-8-1(d)(ii) (West 2012)) and aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2012)). The trial court sentenced him to consecutive prison terms of 35 years and 4 years, respectively. Defendant timely appeals and

argues that the trial court erred in failing to inquire into his posttrial claim of ineffective assistance of counsel as required under *People v. Krankel*, 102 Ill. 2d 181 (1984). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On June 15, 2012, defendant shot his wife, Katherine L. George, multiple times in the legs with a shotgun in their Rockford home. On February 19, 2014, defendant was indicted on the following four counts: (1) attempted first-degree murder of Katherine, while personally discharging a firearm (720 ILCS 5/9-1(a)(1) (West 2012); 730 ILCS 5/5-8-1(d)(ii) (West 2012)); (2) attempted first-degree murder of Katherine's 18-year-old daughter, Stephanie George (720 ILCS 5/9-1(a)(1) (West 2012)); 730 ILCS 5/5-8-1(d)(ii) (West 2012)); (3) aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2012)); and (4) unlawful use of a weapon by a felon (*id.* § 24-1.1(a)).

¶ 5        On April 16, 2015, defense counsel informed the trial court that defendant wished to proceed *pro se*. After an extensive discussion with defendant, the trial court allowed defendant to do so. On April 20, 2015, defendant advised the trial court via letter that he no longer wished to proceed *pro se*. The trial court reinstated the public defender and continued the matter.

¶ 6        On April 21, 2015, defendant entered a partially negotiated guilty plea to amended charges of attempted murder and aggravated discharge of a firearm. During admonishments, the trial court noted that defendant had previously requested that counsel be discharged and asked defendant whether he and counsel were "working well together now." Defendant responded, "Yes." The court asked whether counsel met with him and answered all his questions yesterday. Defendant indicated that he had. The court told defendant that counsel would continue to represent him through sentencing. The court asked defendant: "[U]p to this point in time, are you satisfied with

the representation you have received?" Defendant responded, "Yes." After hearing the factual basis of the plea, the trial court accepted defendant's guilty plea.

¶ 7    On July 29, 2015, following a hearing, the trial court sentenced defendant to concurrent prison terms of 25 years for attempted murder and 10 years for aggravated discharge of a firearm. On July 31, 2015, defendant filed a motion to correct the sentence. On August 14, 2015, defendant moved to withdraw his guilty plea.

¶ 8    On October 26, 2015, defense counsel advised the trial court that defendant told him that he wanted different counsel appointed and defendant explained to the court that counsel had misled him to believe that he would get a 12-year sentence. Counsel responded that he advised defendant of the possible sentencing range and likely told him that he would fight hard for the lowest sentence. The court denied defendant's request to remove counsel, noting that, during the plea hearing, it had advised defendant of the sentencing range and confirmed that defendant had been made no promises as to a specific sentence.

¶ 9    On January 25, 2016, the trial court granted defendant's motion to withdraw his plea, finding that it had improperly admonished defendant that the sentences imposed would run concurrently when the sentences were instead mandatorily consecutive. The matter was set for trial. Thereafter, defense counsel advised the court that, although he and defendant had discussed the possibility of defendant proceeding *pro se*, defendant ultimately concluded that he did not want to do so. Defendant confirmed counsel's statements.

¶ 10   On May 10, 2016, defense counsel informed the trial court that his supervisor had spoken with defendant, informing defendant that the case would not be reassigned to a different public defender. Defense counsel further informed the court that he had requested appointment of a

second public defender to "cochair" defendant's case. The court asked defendant if that was acceptable or if he wished to proceed *pro se*. Defendant asked for time to consider the matter.

¶ 11　On May 24, 2016, defense counsel advised the trial court that defendant wanted to proceed *pro se*. After an extensive discussion with defendant, the trial court granted defendant's request.

¶ 12　On August 8, 2016, defendant moved *pro se* for the appointment of stand-by counsel. The trial court denied the motion and asked defendant if he wanted counsel reappointed. Defendant stated that he wanted counsel appointed but not his original counsel. The court told defendant that he would be represented by his original counsel and a second attorney. The court further indicated that if, on the next court date, defendant wanted to represent himself, the court would consider it.

¶ 13　On August 26, 2016, defense counsel advised the trial court that when he went to see defendant to prepare for trial, defendant refused to meet with him, stating that he was representing himself. Defendant told the court that he was not willing to work with defense counsel and that he wanted to represent himself with stand-by counsel. The court permitted defendant to proceed *pro se* and denied his request for standby counsel.

¶ 14　Defendant appeared *pro se* from August 26, 2016, up until the start of the jury trial, including during the jury selection process. However, on December 6, 2016, the day the trial was set to begin, defendant told the trial court that he "[didn't] stand a chance" representing himself and asked that counsel be appointed. The court advised defendant that if he wanted appointed counsel, the same defense counsel, along with cocounsel, would likely be reappointed. Defendant responded, "Better to fall on his mistakes than my own." The court reappointed counsel and continued the matter.

¶ 15　On January 24, 2017, defense counsel informed the trial court that he and cocounsel had met with defendant and gathered the additional discovery that was tendered after he had been

previously removed from the case.  Counsel advised that they were ready to set the matter for trial.  Thereafter the following colloquy took place:

"[DEFENSE COUNSEL]: *** I just want to make sure that we proceed in a very orderly manner.  I've been removed, I believe, three times from this case.  There have been always differences of opinion between myself and [defendant], and I want to make sure that if there are any issues—Judge, he is in court.  If he has any issues about my representing him—ineffectiveness issues—I would like to have them addressed.  So if he has anything to say, I want to make sure that the day of trial, Judge, we don't go back to maybe prior issues.

THE COURT: All right.  Well, [defendant] always has the right to bring that to my attention if he has any issues that he wishes to address regarding your representation or [cocounsel's] representation, if he wishes.  So he knows that.  It's stated on the record.

So if at any time you have issues you want to raise, you raise them.  All right?

THE DEFENDANT: Yeah.  I'm just wondering—he telling me one thing, he'll come see me.  I seen him one time for 45 minutes.

Soon as we set for trial, you gonna come see me sometime or what are we gonna do?

[DEFENSE COUNSEL]: Sure, Judge.

THE DEFENDANT: I don't want you as my attorney.

[DEFENSE COUNSEL]: Sure, Judge.  And that's been clarified.  I want to make sure it's understood that I am on the case and that's the way it is.  My—my supervisor has told me this is my case.  I know he doesn't want me on his case.  That's why we have co-counsel.

- 5 -

Also, to say that I've only seen him one time, Judge, I'll make a more formal record later on as to the number of times I've actually seen him. So I just want to make the record clear that to say that I only saw him one time is inaccurate.

That being said, we have a trial date, Judge, and we'll go and see him with [cocounsel].

THE COURT: All right."

¶ 16    At the start of defendant's trial on April 18, 2017, three public defenders represented defendant. At the outset, defendant told the trial court that he did not want to be represented by his original defense counsel and that he wanted to proceed *pro se*. Defendant complained that counsel told him that he was going to pick the jury and that defendant did not have a say. He stated: "So what am I here for? It's like my whole life falls in the balance of his hand or his discretion. He's not for me." After discussion with defendant and counsel, the court stated:

"I'm not removing counsel from this case. They have done nothing that's wrong. It is absolutely right what he said, that trial strategy is the attorney's decision, that there are ultimately only basically 5 issues that you have the final say on. One is whether it's a jury trial or a bench trial. 2 is whether you testify. 3 deals with types of defenses that are presented. Those are the types of things. Jury selection they will certainly consult with you, but in the end it's their decision as to who they keep and who they don't keep as jurors. And the day-to-day strategy of the trial rests in the hands of the attorney. I'm not going to allow you to back out of this because then once again you would be looking for time to prepare for trial. We have been in this multiple times.

Your request to fire the Public Defenders' Office is denied. They will remain on the case."

The matter proceeded and a jury was selected.

¶ 17    Defendant was tried on the charges of attempted first-degree murder of Katherine and Stephanie and aggravated discharge of a firearm. The evidence generally established the following. During the early morning of June 15, 2012, Katherine returned home from taking her 12-year-old daughter, Katrina, to urgent care for a sore throat and went to her second-floor bedroom to change into pajamas. While changing, she was confronted by defendant who said, " 'I am getting ready to kill you.' " Defendant retrieved a shotgun from the bedroom closet. Katherine ran to Stephanie's bedroom and closed the door; she got down on her knees and held the door shut. Stephanie was in the upstairs bathroom when she heard defendant tell her mom that he was getting ready to kill her. Defendant opened the bathroom door, pointed a shotgun at Stephanie's face and said, " 'Bitch, I should shoot you in your face.' " From inside Stephanie's room, Katherine begged defendant not to hurt her kids. Defendant turned around and fired through the bedroom door. Katherine testified that the shot grazed her ear and struck her grandson's crib; her grandson was in the crib, but he was not harmed. Defendant entered Stephanie's room, stood over Katherine, and shot her in the legs several times. Katrina woke up when she heard "[l]oud booms." She exited her bedroom, which was located next to Stephanie's, and she saw defendant standing over her mother and shooting her. When defendant ran out of ammunition, he left the scene. Katrina called 911. Katherine was taken to the hospital and treated for multiple gunshot wounds to her legs. She was hospitalized for two-and-a-half months. Police located a 12-gauge shotgun in the master bedroom closet and five spent shotgun shells on the floor of the second story. The fragments from the ammunition were not suitable for comparison.

¶ 18    On direct examination of one of the officers who processed the crime scene, defense counsel objected to the admission of certain photographs, arguing that the witness did not have

personal knowledge that certain items were fired projectiles. The objection was overruled. Later, when the photographs were admitted, the court noted that it was over defense counsel's objection. Defendant raised his hand. Defense counsel approached the bench and indicated that he was "concerned about an outburst." The trial court excused the witness and the jury. The court asked defendant if he had anything to say and the following colloquy took place:

"THE DEFENDANT: Yes. Every question that I have, that I get, counsel shoots it down. I wanted to know from the police was, [the victim] testified that I shot her 4 times. I wanted to know where the shooting took place, why if I shot her 4 times, where did it take place at, and get that on the record. Why are all of the photos, the markers, where the shells are all in different spots, scattered are all over the house.

THE COURT: He hasn't had a chance to cross-examine this witness yet. We are still on direct examination, but you understand, we talked about this yesterday. Ultimately trial strategy and the questions that are asked rests upon the decision made by the Defense Attorney. He is consulting with you. You can tender questions to him that you think ought to be asked, but in the end it's his decision, not yours."

¶ 19    During a break, the following colloquy took place:

"[DEFENSE COUNSEL]: *** I just want to put for the record that throughout this trial, both yesterday and today, all witnesses during cross-examination, prior to termination of cross-examination on my part, I always consulted with [defendant]. If there were any additional questions that he wanted me to pose to the witnesses, I have tried to incorporate those into my questions if appropriate, so he's been consulted.

THE COURT: All right. I appreciate that. The record certainly has reflected that because every time before you do cross you consult with [defendant] and your team, and before you conclude your cross you consult with him again."

Defendant then stated that he had certain questions that he wanted counsel to ask, but counsel refused to ask them, telling defendant that they were not relevant. The court told defendant that, if counsel found defendant's questions to be irrelevant, he was not required to ask them.

¶ 20    On April 20, 2017, the State rested. The trial court granted defendant's motion for a directed verdict on the charge of the attempted murder of Stephanie. Defense counsel indicated that he would not be putting forth any evidence and that defendant did not wish to testify. The court asked defendant whether anyone forced him to give up his right to testify. Defendant responded that he did not wish to testify because he was dissatisfied with his defense:

"THE DEFENDANT: I feel I'm being forced not to testify because my Defense asked no questions that would be relevant. They are all leading to be against me. That's why I don't want to testify.

THE COURT: So you have chosen not to testify as a way to protest because you don't think your Defense team has asked enough of your questions. Is that what you are telling me?

THE DEFENDANT: That and the questions would not help me; they would only hinder, hurt me.

THE COURT: What questions do you believe hindered or hurt you? All of them?

THE DEFENDANT: Yes; all of my—just my whole Defense, that's why I won't testify.

THE COURT: You are not paying attention because [defense counsel] made big points on your behalf yesterday with that scientist from the Illinois State Police Crime Lab, so maybe that's a further indication of you not understanding what's going on in these proceedings.

That's aside right now. I need to know, do you wish to testify?

THE DEFENDANT: No."

¶ 21 The jury found defendant guilty of the attempted first-degree murder of Katherine (720 ILCS 5/9-1(a)(1) (West 2012); 730 ILCS 5/5-8-1(d)(ii) (West 2012)) and aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2012)). The jury further found that defendant personally discharged a firearm in the commission of attempted first-degree murder (730 ILCS 5/5-8-1(d)(ii) (West 2012)).

¶ 22 Defendant filed a motion for a new trial. At the hearing on the motion, defense counsel indicated that he had previously reviewed the motion with defendant and cocounsel. The trial court denied the motion, and the matter proceeded to a sentencing hearing. Following the hearing, the trial court sentenced defendant to consecutive terms of 35 years in prison for attempted first-degree murder and 4 years in prison for aggravated discharged of a firearm.

¶ 23 On June 23, 2017, defendant, through counsel, filed a motion to reconsider the sentence, arguing that the sentence was excessive. On July 25, 2017, defense counsel advised the trial court that he had twice met with defendant to review the motion—once with his investigator on June 23, 2017, and once with cocounsel on July 18, 2017. Defendant claimed that counsel never reviewed the motion with him. Defendant further claimed that when he asked about a postconviction hearing, counsel told him that he "can't file no amended motion because [the court] didn't let [him] go pro se." Cocounsel confirmed that they told defendant that it was too early to file a

postconviction petition and that they had asked him whether he had anything to include on the motion for reconsideration. Defendant stated:

> "[Cocounsel] just coincided with whatever [defense counsel] tell him to do. They never went over it with me. He never continued to ask me anything or what I saw or anything. He just handed me the piece of paper, and he went into about, well, you got an opportunity to go pro se, and so I tell him, you didn't ask any questions at trial then. It just blew up as it always does. He never went over it. He never asked me anything."

Thereafter, the court explained to defendant that the motion to reconsider sentence was the last step in the process before an appeal. The court told defendant that, if he wanted to represent himself on the motion for reconsideration sentence, the court would consider the request. The court stated: "I don't find from [what] you have told me that there is a reason for me to remove [defense counsel] or [cocounsel]." Defendant then told the court that defense counsel "despises" him and that they cannot get along with each other. The court stated:

> "Well, you don't have to get along in order for him to represent you. As far as his stating how long he has been with the county, that is part of the information that the Court is to consider as a part of what we call a Krankel hearing. I can take into the account the experience of counsel involved in it, and I do. I take into account that, I take into account your comments, I take into account not only [defense counsel's] comments but [cocounsel's] comments, and as I said, I don't find a basis to remove [defense counsel]. I don't find he has been ineffective. Your statement that he didn't ask any questions at trial was not accurate. I presided over the trial. So they remain your counsel. If you don't want to cooperate, that—I guess that is up to you. But they are right, as long as you are represented by counsel, you cannot file your own motions, pro se motions. The Court

won't consider them. They are only considering motions filed by defense counsel. Unless you are filing motions asking me to just remove counsel and proceed pro se, then I'll consider such a request if that is what you wish to do."

Defendant stated that "[a]ll [he] wanted [defense counsel] to do was help [him] with a pro se amended motion" to raise any "constitutional violations" but that counsel told him that he could not file one. The court explained to defendant that he could not yet file a *pro se* postconviction petition. The court advised defendant that a motion to reconsider sentence prepared by counsel was currently pending. The court asked defendant whether he wanted the court to address it or whether defendant wanted to proceed *pro se*. Defendant indicated that he wanted to proceed *pro se*. The trial court granted defendant two weeks to prepare an amended motion to reconsider sentence.

¶ 24    On October 30, 2017, defendant filed a *pro se* amended motion to reconsider sentence, containing nine numbered arguments. Arguments one through eight concerned evidentiary issues. Argument nine asserted that his "sentence was excessive in light of the nature and circumstances of the offense and history presentence report and statements not presented at trial which would contradict testimony."

¶ 25    The trial court heard defendant's *pro se* motion on December 8, 2017. The trial court informed defendant that several of the arguments that he purported to raise in his motion for reconsideration of sentence should have been raised in a motion for a new trial. The trial court then addressed the argument related to sentencing. During the hearing, defendant argued that it was "scientifically impossible" for the projectiles to travel as described in the testimony at the sentencing hearing and at trial. Defendant argued "At trial I wasn't allowed or permitted to say anything, nor did my counsel say—address any of these things." The court stated that defendant's

disagreement with the testimony is not at issue on a motion for reconsideration of sentence. Defendant claimed that his sentence was excessive. He stated:

"First, I was denied a counsel that I could work with. Counsel that I did receive wasn't agreeing on anything. He had already told me he couldn't defend me, but he was adamant that, if he wasn't my lawyer, I would have to go pro se, I couldn't get nobody else. He sat there through the whole trial, asked four questions."

Defendant continued to argue the sufficiency of the evidence. The court stated: "Once again, sir, you're arguing things that relate to the trial, not things that relate to the sentencing hearing. This is a motion to reconsider sentence." Noting that the motion for new trial had already been denied, the trial court denied defendant's motion for reconsideration of his sentence. Thereafter the following transpired:

"[DEFENDANT]: May I ask a question, your Honor.

THE COURT: Yes, sir.

[DEFENDANT]: At what point in time can I file a motion—at what point in time can I file a motion [*sic*] ineffective assistance of counsel? Because you said we take one step at a time, one thing at a time. That's why I'm asking.

THE COURT: Well, I have denied your motion to reconsider sentence. The motion for new trial, arguably, that could have been raised then. I guess the next step would be to raise it either on direct appeal or postconviction, because the sentence that I previously imposed, I'm not going to delay these matters any longer than that. The sentence I ordered previously will be put into effect, but you do have a right to appeal these matters."

The court then briefly discussed whether defendant would be admonished again of his appellate rights. The following colloquy then occurred:

"[DEFENDANT]: Because you're saying it's too late—are you telling me I'm led to believe it's too late to file ineffective assistance of counsel? No one ever told me that.

THE COURT: There are no more proceedings in front of this Court. Everything from this point on will be in front of the appellate court, other than if you—and that's if you follow the appropriate rule."

¶ 26    Defendant timely appealed.

¶ 27                                    II. ANALYSIS

¶ 28    Defendant argues that, because the trial court "rejected [his] request to raise *pro se* allegations of ineffective assistance of counsel and failed to inquire into the factual basis for those claims," the matter must be remanded for a proper inquiry and, if necessary, appointment of counsel to investigate those claims. The State responds that the record refutes defendant's argument, demonstrating that the court conducted a proper preliminary inquiry and denied defendant's claim. We agree with the State.

¶ 29    Pursuant to *Krankel* and its progeny, when a defendant raises a *pro se* posttrial claim of ineffective assistance of counsel, the following procedure should be followed to determine whether new counsel should be appointed:

"  '[W]hen a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed.' " *People v. Jolly*, 2014 IL 117142, ¶ 29 (quoting *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003)).

¶ 30    To determine whether new counsel should be appointed, "some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary." *Moore*, 207 Ill. 2d at 78. As part of that interchange, the trial court may question defense counsel and the defendant about the facts and circumstances surrounding the defendant's allegations. *Id.* However, an interchange with counsel or the defendant is not always necessary, as "the trial court can base its evaluation *** on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *Id.* at 79. In every case, the court must "conduct some type of inquiry into the underlying factual basis, if any, of a defendant's *pro se* posttrial claim of ineffective assistance of counsel." *Id.*

¶ 31    "The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *Moore*, 207 Ill. 2d at 78. This issue presents a legal question, which we review *de novo*. *Jolly*, 2014 IL 117142, ¶ 28.

¶ 32    In support of his argument that the trial court failed to inquire into his claims of ineffectiveness, defendant directs this court's attention to the colloquy that took place between defendant and the trial court on December 8, 2017, after the court denied defendant's *pro se* motion to reconsider sentence. To be sure, when read in isolation, the colloquy seems to suggest that the court failed to inquire into defendant's allegation of ineffective assistance of counsel, as the court responded to defendant's question about raising such an issue by stating: "I have denied your motion to reconsider sentence. The motion for new trial, arguably, that could have been raised then." However, defendant's argument takes this interchange out of context. The record shows that, throughout the proceedings, the trial court allowed defendant to communicate, on numerous

- 15 -

occasions, his concerns about counsel and, moreover, that the court properly addressed those concerns. Thus, defendant's attempt to resurrect his ineffectiveness claims at the December 8, 2017, hearing was properly rejected.

¶ 33 The record demonstrates that the trial court was well aware that defendant's animosity toward defense counsel was the basis of his complaints concerning counsel's performance. For instance, during trial, defendant complained to the court that counsel was not asking the questions that defendant wanted asked. (Indeed, it was counsel who brought the matter to the court's attention.) The court stopped the proceedings to discuss the matter with the parties. Counsel expressed that he had consulted with defendant repeatedly during cross-examination and incorporated all of defendant's questions when appropriate. The court advised defendant that counsel was not required to ask irrelevant questions. Later, after the State rested, defendant stated, "[M]y Defense asked no questions that would be relevant. They are all leading to be against me." When the court asked defendant "What questions do you believe hindered or hurt you?" Defendant responded, "[M]y whole Defense." The court then told defendant that he was "not paying attention because [defense counsel] made big points on your behalf yesterday with that scientist from the Illinois State Police Crime Lab."

¶ 34 Moreover, although not mentioned by defendant on appeal, the record also shows that the trial court conducted a proper *Krankel* hearing on July 25, 2016, when the parties appeared on defendant's initial motion to reconsider sentence. Defendant raised numerous contentions, including that counsel never went over the motion to reconsider sentence with him, never asked him anything, and told him that he could not file an amended motion. The trial court allowed counsel and cocounsel to respond and then asked defendant if he had anything else to say. Defendant added that counsel did not "ask any questions at trial." The court concluded that there

was no basis to remove defense counsel. Defendant thereafter made clear that he and counsel "do not get along.' The court stated:

"Well, you don't have to get along in order for him to represent you. As far as his stating how long he has been with the county, that is part of the information that the Court is to consider as a part of what we call a Krankel hearing. I can take into the account the experience of counsel involved in it, and I do. I take into account that, I take into account your comments, I take into account not only [defense counsel's] comments but [cocounsel's] comments, and as I said, I don't find a basis to remove [defense counsel]. I don't find he has been ineffective. Your statement that he didn't ask any questions at trial was not accurate. I presided over the trial. So they remain your counsel."

Given the trial court's thorough knowledge of the case history, its discussions with both counsel and defendant throughout the proceedings concerning defendant's allegations, its knowledge of the evidence presented, and its knowledge of counsel's performance at trial, we conclude that the court properly inquired into and rejected defendant's claims.

¶ 35    Based on the above, defendant's attempt to subsequently resurrect his ineffectiveness claims on December 8, 2017, during the hearing on his *pro se* amended motion for reconsideration was properly rejected. Having already conducted a preliminary inquiry into the matter, the court was correct in telling defendant that "there are no more proceedings in front of this court."

¶ 36                                    III. CONCLUSION

¶ 37    For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 38    Affirmed.