NOTICE
Decision filed 07/02/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 170058-U

NO. 5-17-0058

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-CF-736 |
| | ) | |
| ANTOINE KILLION, | ) | Honorable |
| | ) | Zina R. Cruse, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE WELCH delivered the judgment of the court.
Justices Overstreet and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's order finding that there was no basis for the defendant's *pro se* posttrial claims of ineffective assistance of counsel is vacated where the court failed to properly conduct a *Krankel* inquiry into his claims, and we remand with directions to the court to conduct a proper inquiry into the defendant's *pro se* claims against trial and posttrial counsel.

¶ 2    This is a direct appeal from the circuit court of St. Clair County. At a December 30, 2015, bench trial, the defendant, Antoine Killion, was convicted of four counts of aggravated battery to a physically handicapped person (720 ILCS 5/12-3.05(d)(2) (West 2014)). The trial court then sentenced him to four years' imprisonment on each conviction, with the sentences to be served concurrently, and to be followed by one year

1

of mandatory supervised release (MSR). On appeal, the defendant argues that the trial court failed to conduct a proper inquiry into his ineffective assistance of counsel claims and that the State failed to prove him guilty beyond a reasonable doubt. For the reasons that follow, we vacate the trial court's order finding that there was no basis for the defendant's *pro se* ineffective assistance of counsel claims and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4     On June 19, 2015, the defendant was charged with four counts of aggravated battery to a handicapped person (*id.*) in that he punched his wife, who had multiple sclerosis, in the face, pulled hair from her scalp, slammed her head against a patio door, and spit on her. At an October 20, 2015, pretrial hearing, the trial court noted that the defendant had mailed some *pro se* motions[1] to the court and questioned the defendant as to whether he had spoken with his attorney. The defendant indicated that he had "not really" discussed the case strategy with his counsel and that they were having "difficulties." The court responded that it sounded like there was a "breakdown of communication" between the defendant and his attorney, which needed to be restored. The court explained that it could not consider the defendant's *pro se* motions until they were adopted by counsel and that counsel must decide, based on the evidence, whether to adopt a *pro se* motion. The court encouraged counsel and the defendant to meet in the next week to discuss the defendant's concerns. The defendant responded that he believed that there was an eavesdropping issue with the case because the investigating detective had eavesdropped on a private telephone conversation between him and his wife. Trial

---

[1]The defendant's *pro se* motions were not filed with the trial court.

counsel stated that he was researching that issue to see whether it had any merit. There was no pretrial motion filed regarding the eavesdropping issue raised by the defendant.

¶ 5    The defendant's bench trial was held on December 30, 2015. Before the trial began, the defendant indicated that there were issues that he had wanted his attorney to address, but counsel did not address those issues, so he filed his own motion. The trial court responded that it could not address any of the issues raised by the *pro se* motions unless they were adopted by trial counsel. The defendant then indicated that he wanted to file a motion for ineffective assistance of counsel because his counsel did not adopt his motions, advised him not to testify, and his speedy trial rights were violated. The court responded that it was not ineffective assistance for counsel to advise him not to take the stand and that they had already discussed the speedy-trial allegations at the previous hearing. The court then stated that it did not find any basis for a claim of ineffective assistance of counsel, that the court and the defendant had "gone through this on more than one occasion," and that they were going to proceed with the trial.

¶ 6    At trial, Precious Smith, the defendant's wife since 2008, testified that she was a disabled veteran and that she was diagnosed with multiple sclerosis in 2009. She was training for an impending deployment in Oklahoma when she first experienced symptoms; she explained that there was no air conditioning in the barracks and the heat caused the symptoms to flare up. Thereafter, she was honorably discharged from the army because of her diagnosis, and she was currently receiving disability. She testified that the defendant was aware of her diagnosis.

¶ 7    Regarding the incident in question, Smith testified that, on June 15, 2015, she and the defendant were in the process of moving into their new home when he stated that he had to take his friends home. The defendant left around 5 p.m. and did not return until 1:30 a.m. She called him several times to see when he would be home because he had her new truck. When he returned home, he was angry and accused her of embarrassing him in front of his friends by continuing to call him. She pointed out that he was driving her truck, that he had wrecked her previous three trucks, that he was driving while intoxicated, and that he needed to come home because he was spending her money on alcohol. In response, he told her to sit down in a chair, started punching her in the head, ripped out some of her hair, and banged her head against the ground and walls. When the chair eventually broke, she fell to the floor, and he proceeded to spit on her for about five minutes. She explained that she felt like she was going to die, the room was spinning, and she had to focus on controlling her breathing.

¶ 8    After the defendant fell asleep, Smith left the home and drove to her father's house. She and her mother then went to the hospital, and she filed a police report while there. While giving her statement to the police officer, the defendant called her, and she answered the call and put it on speaker phone. At that point, a video recording of the conversation between Smith and the defendant was introduced into evidence without any objection from the defendant's trial counsel. The video, which was taken by the officer, showed Smith sitting on a hospital bed while talking with the defendant on speaker phone. Throughout the video, the police officer guided her on what to say. When she brought up his hitting her, he blamed her for his behavior, told her that she had

4

disrespected him, and she needed to learn her place. Thereafter, the defendant was arrested, and he wrote her two letters from jail, which referenced the altercation. Those letters were admitted into evidence. She filed for divorce after this incident.

¶ 9 Smith testified that she currently needed a wheelchair to get around and was in a wheelchair on the day of the trial because of the progression of her disease and from the flare-ups that were caused by the stress of going through the divorce and the trial. However, she was able to drive the night of the incident, and, at that time, she did not always need the wheelchair to get around. She explained that multiple sclerosis affected people differently, that it interferes with the signals from the brain, and that it affected her walking, her handwriting, and her vision. She further explained that heat and stress caused her to experience an exacerbation of her symptoms.

¶ 10 Evelyn Sims, Smith's mother, testified that, on June 16 at approximately 1:30 a.m., Smith came to her house and was very upset; she explained that Smith was crying, seemed scared, and needed to go to the hospital. Sims observed that some of Smith's hair had been torn out of her head, there was a knot on her head, and there was a spot under her eye. Sims testified that she was surprised that Smith even made it to her house because Smith was so upset.

¶ 11 Dr. Charles Auer, the emergency room physician at Belleville Memorial Hospital, testified that he was not Smith's treating physician on June 16, but he had reviewed her medical records. He noted that the medical records indicated that the treating physician observed some tenderness in the right cervical area of Smith's neck and some tenderness

5

around her scalp. The records also indicated that she was instructed to take Tylenol and Motrin and prescribed ibuprofen/Motrin.

¶ 12    The defendant then testified as follows. He testified that he was alone at his house from June 14 until June 16; he did not leave the house until he was arrested. He believed that Smith brought charges against him because of "greed." He acknowledged that Smith told him that she had been diagnosed with multiple sclerosis.

¶ 13    After hearing the testimony, the trial court found the defendant guilty on all four counts of aggravated battery of a handicapped person.

¶ 14    On January 15, 2016, the defendant filed a *pro se* motion for ineffective assistance of counsel, asserting that he had suffered actual and substantial prejudice by his counsel's failure "to have a posttrial motion hearing before sentencing." On January 21, 2016, the defendant's counsel filed a motion for judgment notwithstanding the verdict, or alternatively, a new trial. In the motion, counsel argued that the State failed to prove the defendant guilty beyond a reasonable doubt. On January 27, 2016, the defendant filed several additional *pro se* motions, including another motion for ineffective assistance of counsel. In that motion, he argued as follows: (1) that a charge of aggravated battery should have been considered; (2) that he did not have a proper pretrial hearing demonstrating a substantial deprivation of his constitutional rights; (3) that his counsel did not call the investigating detective to testify in order to verify whether Smith's testimony was consistent with her statement; (4) that his counsel failed to seek the suppression of the video recording of the phone conversation; (5) that his counsel failed to seek the suppression of the letters that he mailed to Smith while incarcerated; (6) that

6

counsel failed to raise the issue that the State had perjured itself at the preliminary hearing; (7) that his counsel failed to argue that there was no evidence supporting "most of the felony counts"; (8) that his counsel violated his constitutional right to a speedy trial; (9) that " 'an actual conflict of interest' occurred at trial when the attorney denied having a pretrial hearing"; (10) that counsel failed to offer expert testimony during a pretrial hearing to determine whether Smith was incompetent for trial; (11) that counsel's "strategy, tactics, or decision making" was ineffective; (12) that the defendant was prejudiced by counsel's failure to defend him; (13) that his counsel was unable to devote "full effort" to his case; (14) that counsel failed to argue that Smith's testimony was inconsistent with her statement; and (15) and that his posttrial counsel had a duty to investigate the case and support the defendant's claims with adequate documentation.

¶ 15    On January 29, 2016, the trial court held a hearing on counsel's posttrial motion and to conduct a preliminary inquiry into the defendant's ineffective assistance of counsel claims as required by *People v. Krankel*, 102 Ill. 2d 181 (1984).  At the hearing, the court addressed each of the defendant's contentions with the defendant and made the following findings.  The court found that the defendant's allegation that counsel had failed to file a posttrial motion was premature as counsel had 30 days to do so and that there was no basis for that allegation because counsel had subsequently filed a posttrial motion.  As for the allegation concerning the aggravated battery charge, the defendant indicated that he believed that he was charged under the wrong statute because the charging instrument did not mention that there was a weapon involved.  The court responded that he was not charged under the wrong statute because he was found guilty, and that he was lucky that

a weapon was not included in the charges because, if it had been, he would be looking at being charged with a higher class felony and receiving a greater sentence.

¶ 16   As to his allegation regarding the pretrial hearing, the defendant indicated that he did not have a pretrial evidentiary hearing where the trial court considered all of the evidence to determine what evidence was admissible.  The court addressed that allegation by saying that counsel would have made the necessary admissibility objections at the trial.  The court also noted that there was nothing questionable about any of the evidence that was introduced.

¶ 17   With regard to Smith's statement being different from her testimony, the defendant indicated that Smith had claimed in her police statement that there was a weapon involved; however, she did not mention any weapon at trial.  He indicated that he believed that Smith was not telling the truth.  In response, defense counsel indicated that it was trial strategy not to question Smith about a weapon since counsel did not know how she would answer that line of questioning.  Concerning the admissibility of the defendant's letters, the trial court noted that the issue had been raised by the defendant's counsel at trial.  With respect to the defendant's allegation that he did not have a pretrial hearing, it was clarified that the defendant thought he would have a hearing on the motions *in limine* filed by the State and his counsel.  However, the motions dealt with whether his previous convictions were admissible, and this issue became moot when he decided to proceed with a bench trial.

¶ 18   Regarding the defendant's claim that counsel was ineffective for not having Smith's competency evaluated, the defendant's counsel responded that there were no

grounds to have Smith evaluated. The defendant responded that Smith was a different person mentally, that she had taken his cell phone while he was in jail, and that his cell phone had potentially exonerating evidence on it, but he no longer had access to it. Defense counsel noted that he had spoken to the defendant about the cell phone and indicated that if they were going to take the time to figure out the issue with the phone, they would have to continue the trial and toll the time for speedy-trial purposes, which was something the defendant did not want to do.

¶ 19 The trial court then indicated that the only issue that may have some substance was the issue concerning the video recording of the cell phone conversation between the defendant and Smith. The defendant indicated that the recording should have been suppressed based on section 14-2 of the Criminal Code of 2012 (Code) (720 ILCS 5/14-2 (West 2014)).[2] The court questioned defense counsel as to whether the recording was outside the protection of the statute. Counsel responded that he had spoken with the defendant and had provided the defendant with an updated copy of the statute, which included an exemption[3] that covered this situation, and would prevent trial counsel from

_____

[2]Section 14-2(a)(1) of the Code (720 ILCS 5/14-2(a)(1) (West 2014)) instructs as follows: that a person commits eavesdropping when he or she knowingly and intentionally uses an eavesdropping device, in a surreptitious manner, for the purpose of overhearing, transmitting, or recording all or any part of any private conversation to which he or she is not a party unless he or she does so with the consent of all of the parties to the private conversation. The Code then identifies several exemptions where the use of an eavesdropping device in a surreptitious manner does not constitute eavesdropping. *Id*. § 14-3. The following is the exemption that the defendant's trial counsel contended applied to the video recording: a recording of a conversation made by or at the request of a person, not a law enforcement officer or agent of a law enforcement officer, who is a party to the conversation, under reasonable suspicion that another party to the conversation is committing, is about to commit, or has committed a criminal offense against the person or a member of his or her immediate household, and there is reason to believe that evidence of the criminal offense may be obtained by the recording. *Id*. § 14-3(i).

[3]Although defense counsel refers to it as an exception, the statute refers to it as an exemption, so we will refer to it as an exemption. *Id*. § 14-3.

being successful with a motion to suppress. Counsel explained that Smith was already voluntarily giving an interview when the defendant called her, that she looked to the investigating officer for permission to answer the call, and he told her to go ahead and answer the call. Counsel stated that he believed that the situation fell within one of the listed exemptions. The court then questioned counsel as to whether the investigating officer asked Smith to put the call on speaker phone. The defendant's counsel responded that he did not remember whether the officer told Smith to put the call on speaker phone; he just remembered the officer giving her permission to answer the call. He also noted that, even if the officer told Smith to put the call on speaker phone, the officer did not pressure her to answer the phone. The court then took this matter under advisement.

¶ 20    After the hearing, on February 1, 2016, the trial court entered an order, which stated that it had conducted an initial *Krankel* inquiry on the defendant's claims of ineffective assistance of counsel and found that there was no basis for the issues raised in the defendant's *pro se* motion, and even if the issues had merit, they would not have changed the outcome of the trial.

¶ 21    At the February 9, 2016, sentencing hearing, the trial court initially considered defense counsel's motion for judgment notwithstanding the verdict or, alternatively, a new trial. Defense counsel contended that the State failed to prove beyond a reasonable doubt one of the elements of the offense, *i.e.*, that Smith was handicapped. Counsel noted that there was no testimony from a doctor specifically stating what Smith's issues were. In response, the State argued that there was sufficient evidence to prove Smith was handicapped in that she testified about her multiple sclerosis symptoms. Also, the State

noted that the defendant acknowledged that Smith had multiple sclerosis. After hearing the arguments, the court denied defense counsel's motion.

¶ 22 The trial court then proceeded with the sentencing hearing. After hearing the arguments made by counsel and the defendant's statement of allocution, the court sentenced the defendant to four years' imprisonment on each conviction, with the sentences to be served concurrently.

¶ 23 On February 18, 2016, the defendant filed *pro se* several motions and pleadings, including two motions alleging ineffective assistance of counsel. In the motions asserting ineffective assistance of counsel, the defendant contended that his counsel was ineffective for (1) failing to file a motion to amend the charges from aggravated battery to domestic violence, (2) failing to challenge the information in a pretrial motion, (3) failing to adopt his *pro se* motions, (4) violating his right to a speedy trial, (5) failing to address the fact that the State perjured itself at the preliminary hearing, (6) failing to object to admission of the video recording into evidence, (7) failing to object to Smith's prior inconsistent statement, (8) failing to raise the issue that the "statute should be deemed ambiguous," and (9) failing to raise the issue that "the statute does not mention anything about a family or household member in the legislature [*sic*] intent." On February 23, 2016, the defendant's counsel filed a motion to reconsider the sentence, arguing that the sentence was excessive.

¶ 24 On April 7, 2016, the trial court held a hearing on the defendant's *pro se* motions and defense counsel's motion to reconsider the defendant's sentence. At the hearing, the court addressed each of the defendant's claims of ineffective assistance of counsel and

found that counsel had not been ineffective. The court first indicated that the State, not defense counsel, determined the charges, and the State had proven the elements of aggravated battery beyond a reasonable doubt. The court stated that it had previously addressed the claims that the defendant's speedy-trial rights were violated and that the State had perjured itself. The court noted that no new allegations were contained in the defendant's *pro se* motions. Addressing defense counsel, the court stated that it had been a past practice of the public defender's office, regardless of whether the ineffective assistance allegations had merit, to assign a new public defender when allegations were made and asked counsel whether new counsel would be assigned. Counsel responded that he would be fine with continuing to represent the defendant, but he would ask his supervisor. The court then stated that it would wait to hear the motion to reconsider to see if a different attorney was appointed. The court also indicated that there was no basis for the defendant's claims. That same day, the court entered a written order, finding that there was no basis for the defendant's ineffective assistance of counsel claims.

¶ 25    On April 19 and May 3, 2016, the defendant filed numerous additional *pro se* pleadings. A hearing on the February 23, 2016, motion to reconsider the sentence was held on May 18, 2016. The trial court noted that, although it had found the defendant's previous claims of ineffective assistance of counsel to be baseless, the public defender's office had nevertheless assigned a new attorney to represent him. After new counsel declined to adopt any of the defendant's *pro se* pleadings, the court heard and denied the motion to reconsider the sentence. Counsel filed a notice of appeal on June 3, 2016.

12

¶ 26 On June 6, 2016, the defendant filed *pro se* numerous pleadings and motions, including a motion alleging, *inter alia*, that his new counsel had provided ineffective assistance by failing to address the allegations contained in his *pro se* motions, failing to consult with him about the hearing on the motion to reconsider sentence before it happened, and failing to file a motion for new trial. On July 18, 2016, the Office of the State Appellate Defender, who was appointed to represent the defendant on appeal, filed a motion to dismiss the appeal as premature because timely-filed posttrial motions were pending in the trial court. This court granted the motion, dismissed the appeal as premature, and directed the trial court to address the defendant's *pro se* motions. *People v. Killion*, No. 5-16-0252 (2016) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 27 On October 20, 2016, the trial court held a hearing to conduct an initial *Krankel* inquiry to address the defendant's ineffective assistance of counsel claims against posttrial counsel. At the hearing, while the court was reading through the allegations contained in the defendant's motion, the defendant indicated that his posttrial counsel had not consulted with him at all. The court continued to read through the remaining allegations and did not question posttrial counsel about the defendant's statement. The court then asked the defendant if there was anything that he wanted to add. He responded that his posttrial counsel was ineffective because she failed to present his specific claims of ineffective assistance of trial counsel, that posttrial counsel had failed to sufficiently consult with him to ascertain his allegations of ineffective assistance of counsel, and that posttrial counsel failed to investigate his claims. The court indicated that it could not

hear anything that was not related to the preliminary *Krankel* inquiry, which was whether there was any basis for the defendant's claim that his posttrial counsel was ineffective. The defendant responded that he wanted posttrial counsel to address some other issues and that he had not consulted with her. The court then gave the defendant an additional 30 days to present any additional claims against his posttrial counsel that he had not already raised and indicated that those claims would be included in the court's preliminary review.

¶ 28 On November 23, 2016, the defendant filed another *pro se* ineffective assistance of counsel motion, asserting that his posttrial counsel had failed to consult with him to ascertain his allegations of ineffectiveness, to explain the hearing on the motion to reconsider sentence to him, to adopt his claims of ineffective assistance of trial counsel, and to investigate any new claims that might demonstrate that his trial counsel was ineffective.

¶ 29 On January 9, 2017, the trial court held a hearing on the defendant's *pro se* ineffective assistance of counsel allegations. At the beginning of the hearing, the court indicated that it had addressed all of the issues regarding the defendant's previous counsel and that this hearing was to "wrap up" the claims against posttrial counsel. The court then addressed the defendant and asked him whether he included all of his claims against posttrial counsel in his last *pro se* motion. The defendant indicated that he had claims against both his trial counsel and posttrial counsel. He attempted to discuss issues that happened during his preliminary hearing, but the court made clear that it was only reviewing issues that had arisen since posttrial counsel had been appointed, which was at

14

the hearing on the motion to reconsider his sentence. The defendant then responded that he wanted to address all of his issues since that was the last time he could do so and that he would have liked to consult with his posttrial counsel. The court informed the defendant that it would not look back at the preliminary hearing. The following colloquy then occurred between the court and the defendant:

> "THE COURT: I don't want to hear about the detective. Your sentence needs to say, '[posttrial counsel], did this,' or '[posttrial counsel] didn't do that. That's how the sentence starts.
>
> THE DEFENDANT: Well, she didn't…
>
> THE COURT: That you haven't already addressed in here.
>
> THE DEFENDANT: Okay. [Posttrial counsel] did not address the Court with the issue of, at the preliminary hearing, the detective was asked *** was [Smith] in a wheelchair, and the detective said, no.
>
> And then at the preliminary hearing, the State used the information from that eavesdropping video to get probable cause *** to keep me in prison.
>
> THE COURT: Okay. All right. So I will take these matters under advisement and I'll issue a ruling. Thank you."

¶ 30 On January 24, 2017, the trial court entered a written order, stating that it had conducted an initial inquiry into the defendant's claims for ineffective assistance of counsel and found that there was no basis for any of the allegations. On February 9, 2017, the defendant filed a timely notice of appeal.

¶ 31                                    II. ANALYSIS

¶ 32 On appeal, the defendant first asserts that the trial court did not sufficiently inquire into his *pro se* claims of ineffective assistance of counsel. The defendant argues this cause should be remanded for the appointment of new counsel to investigate his claims

15

about the ineffectiveness of his trial counsel or, alternatively, a new hearing in accordance with *People v. Krankel*, 102 Ill. 2d 181 (1984), so the court can conduct an inquiry into his claims regarding posttrial counsel's failure to communicate with him. The State concedes error, agreeing that the trial court failed to comply with the *Krankel* requirements and that this court should reverse and remand with directions that the trial court conduct a proper inquiry into the defendant's *pro se* ineffective assistance of counsel claims.

¶ 33    Under *Krankel* and its progeny, the trial court is obligated to inquire into a defendant's *pro se* posttrial claims that he was denied the effective assistance of counsel. *People v. Ayres*, 2017 IL 120071, ¶ 11; *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). This inquiry, which is sometimes referred to as a "preliminary *Krankel* inquiry" (*People v. Jolly*, 2014 IL 117142, ¶ 28), requires that, once a defendant brings his *pro se* claim to the court's attention, the court must examine the factual basis of the claim (*Moore*, 207 Ill. 2d at 77-78). A *pro se* defendant is not required to do anything more than bring his claim to the court's attention; the claim does not need to be supported by facts or specific examples. *Ayres*, 2017 IL 120071, ¶¶ 11, 19. The issue can be raised orally or in writing. *Id.* ¶ 11. To understand the factual bases of defendant's allegations, it is proper for the trial court to question both trial counsel and defendant. *Id.* ¶ 12. Also, the court may rely on its own knowledge of defense counsel's performance at trial and the insufficiency of defendant's allegations. *Id.* If defendant's allegations show that trial counsel may have neglected defendant's case, the court should appoint new counsel and set the matter for a hearing. *Moore*, 207 Ill. 2d at 78. If the court determines that the

16

claims lack merit or pertain only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. *Ayres*, 2017 IL 120071, ¶ 11.

¶ 34    Even in preliminary *Krankel* inquiries, a trial court can consider the merits of defendant's *pro se* claims in their entirety when determining whether to appoint new counsel. *People v. Roddis*, 2020 IL 124352, ¶ 61. However, while a defendant's claims may lack merit, the court should give defendant an opportunity to specify and support his claims. *Moore*, 207 Ill. 2d at 80. A preliminary *Krankel* inquiry "serves the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims." *People v. Patrick*, 2011 IL 111666, ¶ 39. Whether the court properly conducted a preliminary *Krankel* inquiry is a legal question reviewed *de novo*. *Jolly*, 2014 IL 117142, ¶ 28. However, if the trial court has properly conducted a *Krankel* inquiry and has reached a determination on the merits of defendant's *Krankel* motion, we will reverse only if the trial court's action was manifestly erroneous. *People v. Jackson*, 2020 IL 124112, ¶ 98.

¶ 35    Here, the State concedes that the trial court did not comply with the *Krankel* requirements because it failed to conduct a preliminary *Krankel* inquiry into the defendant's posttrial claims. As noted by the State in its concession, during the January 9, 2017, hearing, the court refused to allow the defendant to raise any further ineffective assistance of counsel claims regarding his trial counsel, limited his claims against his posttrial counsel, and limited the review to only what his posttrial counsel did since she was assigned to the case by the public defender's office. However, the defendant's claims against his posttrial counsel were intertwined with his claims against his trial

17

counsel. Even if the court found these claims lacked merit or pertained only to matters of trial strategy, it was premature to reach such a conclusion before conducting a proper inquiry into the allegations.

¶ 36 Moreover, we note that, at the October 20, 2016, hearing, as the trial court was reading through the defendant's *pro se* allegations of ineffective assistance of counsel, the defendant indicated that his posttrial counsel had not consulted with him at all before the hearing on the motion to reconsider sentence. The court did not ask him or posttrial counsel about this allegation. Instead, the court continued reading from the defendant's *pro se* motion. Thereafter, the court gave the defendant an additional opportunity to supplement his *pro se* motion for ineffective assistance of counsel; at which time, the defendant again repeated his claim that posttrial counsel had failed to consult with him. However, there was still no inquiry made into this allegation. Where there is no inquiry, and there is no indication that the court gave adequate consideration to the defendant's *pro se* allegation, the only appropriate action for the reviewing court is to remand the matter so that the court can conduct a proper inquiry. See *Moore*, 207 Ill. 2d at 79.

¶ 37 Accordingly, we vacate the trial court's decision that there was no basis for the defendant's *pro se* ineffective assistance of counsel allegations[4] and remand to the trial court to conduct a proper preliminary inquiry in accordance with *Krankel*. "If the court determines that the claim of ineffectiveness is spurious or pertains only to trial strategy, the court may then deny the motion and leave standing defendant's convictions and

---

[4]In doing so, we want to make clear that we are not making a finding on the merits of the defendant's *pro se* allegations of ineffective assistance of counsel.

18

sentences. If the trial court denies the motion, defendant may still appeal his assertion of ineffective assistance of counsel along with his other assignments of error." *Moore*, 207 Ill. 2d at 81-82.

¶ 38    Because this case must be remanded to allow the trial court to conduct proper *Krankel* proceedings, we decline to address the defendant's challenge to the sufficiency of the evidence.

¶ 39                                III. CONCLUSION

¶ 40    For the foregoing reasons, we vacate the circuit court of St. Clair County's order finding that there was no basis for the defendant's *pro se* claims of ineffective assistance of counsel and remand the cause with directions that the trial judge conduct a proper inquiry into the defendant's *pro se* posttrial claims of ineffective assistance of trial and posttrial counsel.


¶ 41    Vacated and remanded with directions.