NOTICE

Decision filed 12/30/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 190124-U

NO. 5-19-0124

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Fayette County. |
| | ) | |
| v. | ) | No. 17-CF-235 |
| | ) | |
| TERRE BROWN, | ) | Honorable |
| | ) | M. Don Sheafor Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Barberis and Vaughan concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Where the evidence overwhelmingly proved defendant's guilt beyond a reasonable doubt, any error in admitting evidence of witnesses' prior consistent statements was clearly harmless, and the court conducted a proper hearing on defendant's allegations of ineffective assistance of counsel, and where any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2   Following a jury trial, defendant, Terre Brown, was convicted of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2016)) and resisting a peace officer (*id.* § 31-1(a)). The trial court sentenced him to two years' probation.

¶ 3   Defendant's appointed attorney, the Office of the State Appellate Defender (OSAD), filed a motion to withdraw as counsel, arguing that this appeal presents no arguably meritorious issues. See *Anders v. California*, 386 U.S. 738 (1967). OSAD has notified defendant of its motion. This

1

court provided defendant with ample opportunity to file a response, but he has not done so. After reviewing the record and considering OSAD's motion and supporting memorandum, we agree that this appeal presents no issue of even arguable merit. Therefore, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 4                                      BACKGROUND

¶ 5      Defendant was charged following an incident with his girlfriend, Chelsey Hughes. Prior to trial, defendant moved to prohibit the State from playing police bodycam footage of officers speaking with several potential witnesses at the scene, arguing that it amounted to prior consistent statements of the witnesses. The court denied the motion, finding that it was important for jurors to hear their contemporaneous statements.

¶ 6      At trial, Vandalia police officer Jonathan Redman testified that he responded to a report of a domestic disturbance on September 14, 2017. Redman spoke to Hughes, who was standing in the driveway. She said that defendant had struck her. She showed Redman marks on her side and arm.

¶ 7      Redman attempted to speak with defendant, who was inside the house. Defendant denied that there had been an altercation and said that Hughes was "trespassed from the property." Redman confirmed that a no-trespass order had been issued against Hughes but he did not know when it was issued. Another officer, Brian Roedl, spoke with other witnesses, who told him they saw defendant push Hughes out the door and that he hit and kicked her.

¶ 8      The officers decided to arrest defendant and told him so although they did not immediately attempt to handcuff him and take him into custody. Defendant called his mother to take care of his children. She arrived as the officers were walking defendant down the driveway. Defendant handed his mother a pacifier and attempted to reach into his pocket, apparently to give her

2

something else. When Roedl would not let defendant put his hands in his pocket, he became "verbally and physically resistant" and had to be forcefully restrained. Roedl grabbed defendant's wrist to put him on the hood of the squad car so that he could be handcuffed. Redman's and Roedl's bodycam footage was played for the jury.

¶ 9 Logan White testified that he was working on a car in a nearby driveway when he saw defendant push Hughes out the front door. He pushed her and kicked her in the ribs. Hughes tried to get into a car, but defendant grabbed her arm and jerked her out. Defendant and Hughes were screaming the entire time and urged bystanders to call the police. White said that Hughes was living at the house. During the argument, defendant yelled at Hughes to "get off [his] property."

¶ 10 Marshall Sowder testified that White was helping him fix his car when he heard yelling and saw Hughes come outside. She went back inside and came back out with defendant right behind her. She tried to get into a car, but defendant pulled her out. The combatants returned to the house, but defendant grabbed Hughes and threw her out the door while defendant was holding a baby. As Hughes tried to get back inside, defendant kicked her in the stomach or rib area. Sowder also believed that Hughes had been living at the property for a few months, as he had seen her coming and going from the premises during that time.

¶ 11 Hughes testified that she had been living with defendant for about two months before the September 14 incident. That day, she and defendant had been arguing sporadically throughout the day. At one point, she decided to leave, so she went out to a red Pontiac that she and defendant owned jointly but she could not find the keys. Defendant grabbed her arm and pulled her out of the car. Hughes went back inside and began packing a bag. Defendant shoved her out the door. She hit the screen door, which left marks on her side. Defendant then kneed her in the leg. She described bruises on her side, her leg, and one arm where defendant grabbed her. Hughes did not

3

know that she had been "trespassed" from defendant's property until Redman told her later that day.

¶ 12    Defendant testified that Hughes was not living at the house.  He had a trespass order against Hughes, although he was not sure of the dates.  He acknowledged that she spent the night before September 14 there but characterized it as a "sleepover."  She was not living there.  On that day, he told her to leave but she refused.  Defendant took her arm and started walking toward the door with Hughes kicking and screaming.  Once she was out of the house, she tried to get into the Pontiac, but defendant shut the door.  When she tried to return to the house, defendant put his knee up to keep her from coming inside.

¶ 13    The defense requested jury instructions on the use of force for defense of a dwelling and defense of property (the car).  Defense counsel argued that defendant's use of force was reasonable to prevent an unlawful entry into the house and to prevent Hughes from taking the car.  The trial court granted an instruction of the former theory but denied one on the latter.

¶ 14    The jury found defendant guilty.  Following trial, defendant complained on multiple occasions about defense counsel.  On one such occasion, the court asked defendant why he was dissatisfied with defense counsel.  During a lengthy exchange between the court, defense counsel, defendant, and the prosecutor, defendant complained about the criminal justice system generally, that he was being targeted for prosecution because of his race, that the court was not "protecting" him and his home, and that he was being "set up" by Hughes's family.  Despite repeated prompting from the court, defendant was unable to provide an example of conduct by defense counsel that he found objectionable.  Defendant responded to several such inquiries by saying that he did not need a lawyer because he was not guilty.  The court found no reason to appoint new counsel.

4

¶ 15    In a posttrial motion, defense counsel argued, *inter alia*, that the court erred in admitting the bodycam footage and wrongly refused to give the instruction on defense of property, and that defendant was not proved guilty beyond a reasonable doubt of resisting because there was no evidence that he disobeyed a specific order.

¶ 16    The court denied the motion. The sentencing hearing had to be continued because defendant interrupted the proceeding to the extent that the court held him in contempt. When the hearing resumed, the court sentenced defendant to 24 months' probation. Defendant timely appeals.

¶ 17                                ANALYSIS

¶ 18    OSAD concludes that it can make no reasonably meritorious argument that defendant's convictions were improper. OSAD first maintains that no meritorious argument exists that defendant was not proved guilty beyond a reasonable doubt.

¶ 19    Where a defendant challenges on appeal the sufficiency of the evidence, we must, while considering all of the evidence in the light most favorable to the prosecution, decide whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime. *People v. Murray*, 2019 IL 123289, ¶ 19 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). Accordingly, we will not substitute our judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses. *Id.*

¶ 20    Defendant was convicted of domestic battery which, as charged, required the State to prove that defendant, without legal justification, made contact of an insulting or provoking nature with Hughes. See 720 ILCS 5/12-3.2(a)(2) (West 2016). Two neighbors, as well as Hughes herself, testified that defendant forcibly removed her from the car and kicked her. Redman, who spoke with Hughes shortly after the incident, noticed that she had marks and bruises. In his testimony,

defendant admitted that he pulled Hughes from the car and kneed her. Thus, the evidence permitted the jury to find that defendant made contact of an insulting or provoking nature with Hughes.

¶ 21 Although defendant admitting making contact with Hughes, he raised the affirmative defense of defense of his dwelling. He contended that he used only reasonable force to prevent Hughes from reentering his home after he had asked her to leave. Evidence showed that defendant had obtained a "no-trespass" order against her, although the date of such order was never established.

¶ 22 "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's unlawful entry into or attack upon a dwelling." 720 ILCS 5/7-2(a) (West 2016). However, the defense is not available where the victim resides at the premises. *People v. Chapman*, 49 Ill. App. 3d 553, 556 (1977).

¶ 23 Hughes testified that she had resided with defendant for approximately two months and that they had two children together. White and Sowder both testified that they had seen Hughes come and go from the residence with such regularity during the past two months that they believed she lived there. Thus, there was ample evidence from which the jury could conclude that Hughes resided at the house. The jury could also have found that Hughes was there with defendant's permission. Defendant admitted that Hughes had spent the previous night at the house although he characterized it as a "sleepover."

¶ 24 In *People v. Barnard*, 208 Ill. App. 3d 342 (1991), this court held that the defendant was not entitled to an instruction on defense of dwelling where evidence showed that he did not object when the victim and another man entered his home and allowed them to remain for 30 to 40

6

minutes watching television before he asked them to leave. *Id.* at 352. The evidence further showed that the defendant and the victim had been friends and had lived together in defendant's home for a time. *Id.*

¶ 25 Defendant also sought an instruction on defense of property in an attempt to justify his act of forcibly removing Hughes from the (jointly owned) car. However, defendant was convicted of only one count of domestic battery. As noted, his act of kicking Hughes was sufficient to prove that he committed a domestic battery against her. Thus, any error by the trial court in refusing defendant's proposed instruction was harmless.

¶ 26 Defendant was also charged with resisting in that he "resisted the performance by Officer Redman *** of an authorized act within his official capacity, being the arrest of said defendant *** in that said defendant refused to obey orders and pulled away from Officer Redman." Redman testified that he informed defendant that he was going to be arrested. After he and Roehl placed defendant under arrest, defendant pulled away from the officers such that he had to be physically restrained. Thus, the evidence was sufficient to find that defendant resisted his arrest.

¶ 27 Defendant contended that there was no proof that he resisted a specific order. However, Roedl testified that when defendant attempted to reach into his pocket, Roedl told him that he could not do so. Thus, the State proved the existence of a specific order. In any event, the reference to an order was arguably surplusage. Defendant was charged with resisting arrest. The officers told defendant that he was being arrested and the subsequent exchange was part of that arrest. *People v. Collins*, 214 Ill. 2d 206, 219 (2005) (where an indictment charges all essential elements of an offense, other matters unnecessarily added may be regarded as surplusage).

7

¶ 28    OSAD next concludes that there is no meritorious argument that the trial court erred by admitting hearsay evidence.  OSAD catalogs several instances in which the trial court admitted hearsay but argues that, even if such evidence was inadmissible, any error was harmless.  We agree.

¶ 29    Defendant moved *in limine* to prohibit the State from admitting video and audio from the officers' body cameras that defendant argued contained hearsay in the form of prior consistent statements of several witnesses.  The court denied the motion.  In addition to playing the video at trial, the State elicited testimony from Redman that he asked Hughes what was happening and she told him that defendant struck her.  Also, Roedl testified that he spoke with two eyewitnesses who said that defendant pushed Hughes out the door and kicked her.

¶ 30    Hearsay is an out-of-court statement offered for the truth of the matter asserted.  Ill. R. Evid. 801(c) (eff. Jan. 1, 2011).  Hearsay is inadmissible absent an applicable exception.  Ill. R. Evid. 802 (eff. Jan. 1, 2011).  Generally, a witness's prior consistent statement is admissible only where there is a charge that the witness recently fabricated the testimony or that the witness has a motive to testify falsely.  *People v. Heard*, 187 Ill. 2d 36, 70 (1999).

¶ 31    Body-worn camera "recordings may be used as evidence in any administrative, judicial, legislative, or disciplinary proceeding."  50 ILCS 706/10-30 (West 2016).  In *People v. Collins*, 2020 IL App (1st) 181746, *appeal allowed*, 183 N.E.3d 909 (Ill. 2021), and *appeal dismissed*, 2022 IL 127584, ¶ 22, the First District held that the admission of such recordings is subject to the rules of evidence, including the hearsay rule.  *Id.* ¶ 22.[1]  Thus, there was at least

---

[1]The supreme court granted the State's petition for leave to appeal to consider its contention that the statutory mandate required the admission of such recordings without limitation.  However, when the State abandoned this position and agreed that the admission of bodycam recordings is subject to the rules of evidence, including the hearsay rules, the court dismissed the appeal.  *People v. Collins*, 2022 IL 127584, ¶ 22.

arguable merit to defendant's motion. Nevertheless, we agree with OSAD that any error was harmless.

¶ 32    As described above, the evidence against defendant was overwhelming. Hughes, as well as two disinterested witnesses, testified that defendant kicked her. The same three witnesses testified that Hughes had been living at the house for at least two months prior to the incident. Redman observed bruises on Hughes. Defendant admitted that his knee made contact with Hughes but insisted that it was justified by an urgent need to prevent her from reentering the house.

¶ 33    The witnesses' recorded statements were consistent with their trial testimony, which defendant did not directly challenge. In fact, he admitted making contact with Hughes but asserted an affirmative defense. The witnesses' statements had little to do with the affirmative defense. Thus, while the exceptions allowing the use of prior consistent statements were arguably not present, defendant was not prejudiced because the evidence was much the same as their trial testimony.

¶ 34    As to defendant's affirmative defense, the evidence that Hughes was living at defendant's house was similarly overwhelming. Hughes testified at trial that she and defendant had an on-again-off-again relationship, that she was the mother of his child, and that she had been residing with him for the previous two months. White and Sowder testified at trial that they had seen Hughes coming and going from defendant's house and assumed she lived there. Defendant admitted that Hughes had spent the previous night at his house. There was evidence that he had obtained a no-trespass order against her, but there was no evidence that it was in effect on the date of the incident. The facts are similar to *Barnard* where the defendant and the victim had been roommates at some point and the defendant had invited the victim over on the day of the incident.

9

Because the evidence overwhelmingly supported the conviction, any error in admitting the bodycam audio was harmless beyond a reasonable doubt.

¶ 35    OSAD's final proposed issue is whether the circuit court conducted an adequate *Krankel* hearing.  New counsel is not required each time a defendant claims that counsel was ineffective. *People v. Moore*, 207 Ill. 2d 68, 77 (2003).  Rather, when a defendant raises such a claim, the circuit court should first examine the claim's factual basis.  *Id.* at 77-78.  If the court finds that the claim lacks merit or pertains only to matters of trial strategy, the court need not appoint new counsel.  *Id.* at 78.  However, if the allegations show possible neglect of the case, the court should appoint new counsel.  *Id.*

¶ 36    Here, after defendant expressed dissatisfaction with defense counsel, the circuit court held a lengthy discussion with defendant and defense counsel.[2]  However, despite repeated prompting by the court, defendant never provided a single specific example of deficient performance by defense counsel.  Instead, defendant launched into a diatribe against the county's justice system in general and the victim's family.  The closest defendant came to providing a reason why he was dissatisfied with counsel was to assert that he did not need counsel at all because he was not guilty. The court gave defendant ample opportunity to provide reasons why counsel was ineffective and should be replaced.  Given that he failed to provide any specific reasons, the court did not err in refusing to appoint new counsel.

---

[2]The prosecutor also participated in these discussions.  Generally, the prosecution should not participate in a *Krankel* hearing.  *People v. Jackson*, 2020 IL 124112, ¶ 114.  Here, however, the prosecutor's remarks were limited to attempting to explain defendant's collateral complaints about the justice system and the victim's family.  The prosecutor did not offer an opinion about defense counsel's performance.  Thus, any error was harmless.

¶ 37                                    CONCLUSION

¶ 38    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 39    Motion granted; judgment affirmed.